IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

JUL 1 3 2026

Nathan Ochsner, Clerk of Court

| | | |
|---|---|---|
| **MATTHEW JAMES LEACHMAN,** Plaintiff | § | |
| | § | |
| **VS.** | § | |
| | § | |
| **TOSIN DAN-ALIU;** | § | |
| **QUANITA EVANS;** | § | Civil Action No. **4:26-cv-04679** |
| **MONICA RUIZ DE VELASCO, Director, TDCJ—Parole Division;** | § | |
| **MARSHA MOBERLEY, Chair, Texas Board of Pardons and Paroles; and** | § | |
| **JANA HULL a/k/a JANA GASTON-HULL d/b/a CENTER FOR P.E.A.C.E.,** Defendants | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff Matthew James Leachman, pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), files this First Amended Complaint under 42 U.S.C. § 1983 and Texas law. Plaintiff seeks damages against the individual-capacity defendants for their own conduct, damages and other relief against Defendant Hull under federal and Texas law as specified below, and prospective relief against the appropriate official-capacity defendants.

## I.

## Parties

1. **Plaintiff Matthew James Leachman** is an individual, residing in Harris County and proceeding pro se. Plaintiff's correct address for service is in the signature block of this complaint and is up-to-date in PACER. At all times relevant to this action, Plaintiff was on mandatory supervision release[1] and under the supervision of the Texas Department of Criminal

---

1 The two forms of release in Texas are often combined into the generalized term "parole," to which Plaintiff does not object.

Justice—Parole Division and the Texas Board of Pardons and Paroles.

2. **Defendant Tosin Dan-Aliu** is a Parole Officer, named in her **personal capacity**. At the relevant times, Defendant Tosin Dan-Aliu was a Parole Officer II employed by TDCJ's Parole Division and assigned to supervise Plaintiff. Plaintiff sues Dan-Aliu in her individual capacity for her own acts and omissions described below.

3. **Defendant Quanita Evans** is a Parole Supervisor, named in her **personal capacity**. At the relevant times, Defendant Quanita Evans was a Parole Officer III–Unit Supervisor employed by TDCJ's Parole Division and exercised supervisory authority concerning Plaintiff's parole supervision and the enforcement actions described below. Plaintiff sues Evans in her individual capacity for her own acts and omissions.

4. **Defendant Monica Ruiz De Velasco**, Director, TDCJ—Parole Division, is named in her official capacity only, as the appropriate TDCJ Parole Division official for prospective relief.[2]

5. **Defendant Marsha Moberley**, Chair, Texas Board of Pardons and Paroles (the "Board"), is named in her official capacity only, as the appropriate Board official for prospective relief.[3]

6. **Defendant Jana Hull**, also known as Jana Gaston-Hull, provided mental-health and treatment services to Plaintiff through Center for P.E.A.C.E. Defendant Hull personally participated in the communications, treatment decisions, disclosures, billing conduct, and other

---

2 At the time of the events relevant to this complaint, the Director was René Hinojosa. Defendant Ruiz De Velasco assumed the position on November 1, 2025, and is named in place of Hinojosa pursuant to Federal Rule of Civil Procedure 25(d). To the extent another official is the proper official-capacity defendant for prospective relief, Plaintiff seeks substitution of that official under Rule 25(d) or other applicable law.

3 At the time of events related to this complaint, the Chair was David Gutierrez. Defendant Moberley assumed the position in September 2024 and is named in place of Gutierrez pursuant to Federal Rule of Civil Procedure 25(d). To the extent another official is the proper official-capacity defendant for prospective relief, Plaintiff seeks substitution of that official under Rule 25(d) or other applicable law.

acts alleged below.[4]

## II.

## Jurisdiction

7. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 and civil-rights jurisdiction under 28 U.S.C. § 1343.

8. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state-law claims against Defendant Hull, including claims under the Texas Deceptive Trade Practices Act, as well as claims for fraud, negligent misrepresentation, breach of fiduciary duty, breach of confidentiality, and unjust enrichment under Texas common law, and related provisions of the Texas Occupations Code governing professional counselors.

## III.

## Facts

9. Plaintiff was, at all relevant times, on mandatory supervision and subject to written conditions imposed by the Parole Board. The written conditions in effect during the events described below included the following:

a. **Special Condition N**, which stated:

> I shall not use the internet to access material that is obscene as defined by Section 43.21, Penal Code; nor access a commercial social networking site, as defined by Article 62.0061(f), Code of Criminal Procedure; nor shall I communicate with any individual concerning sexual relations with an individual who is younger than 17 years of age; nor shall I communicate with another individual that the offender knows is younger than 17 years of age. I shall submit to regular inspection or monitoring of each electronic device I may use to access the Internet.

b. **Special Condition X,** a condition with multiple components, including the two relevant to the events described below:

4 Since removal, Plaintiff has received an Answer served on behalf of Defendant Hull by attorney Derrell L. Wright. Plaintiff is serving this amended pleading on Mr. Wright as Hull's identified counsel.

> Not reside with, have unsupervised contact with, or cause to be contacted, any child 17 years of age or younger, in person, by telephone, correspondence, video or audio devise [*sic*], third person, media, or any electronic means unless you are the legally recognized parent of the child. The supervising parole officer shall pre-approve in writing the contact with the named children and shall pre-approve in writing the chaperone for any authorized contact.
>
> . . .
>
> Enroll and participate in a treatment program for sex offenders as directed by the supervising parole officer.

10. Special Condition N **distinguished between prohibited *obscene* internet material and other internet conten**t. Its internet-content clause prohibited Plaintiff from using the internet to access material that was obscene as defined by Texas Penal Code § 43.21; that clause did **not** prohibit Plaintiff from accessing material when the material was non-obscene but otherwise disfavored by parole officials.

11. The first relevant provision of Special Condition X prohibited Plaintiff from residing with a child age seventeen or younger, having *unsupervised* contact with such a child, or causing such a child to be contacted through the means listed in the condition. The provision did **not** state that Plaintiff was prohibited from incidental or unplanned encounters with children or from mere presence in a public or shared location where children were also present. The condition separately addressed planned contact with "named children" and required written preapproval of both such contact and the chaperone for it.

12. The second relevant component of Special Condition X required Plaintiff to **enroll and participate in** a designated sex-offender treatment program—in this case, Defendant Jana Hull's program through the Center for P.E.A.C.E.

   a. Defendant Hull provided Plaintiff a sample "Treatment Plan" at the time of enrollment to explain how her program worked and what the expectations were.

   b. As relevant here, the Treatment Plan made clear that Plaintiff was to "follow all the rules of parole and the law." It did not state that participation in Hull's program

created new parole conditions beyond those imposed by the State.

c. The remaining provisions addressed matters such as attendance, participation in treatment, completion of assignments, development of coping strategies, and compliance with treatment goals.

13. Separate from the parole-mandated sex-offender treatment program, Plaintiff obtained privately billed mental-health counseling through Defendant Hull and Center for P.E.A.C.E. for post-traumatic stress disorder ("PTSD") and associated symptoms unrelated to sex-offender treatment.

a. Prior to release from prison on mandatory supervision, Plaintiff had been diagnosed with PTSD with symptoms arising from or aggravated by traumatic experiences during his Navy service.[5]

b. Plaintiff sought Defendant Hull's recommendation for a therapist who would accept his Blue Cross Blue Shield of Texas ("BCBS") for PTSD treatment.

c. Plaintiff's symptoms included depression, severe social anxiety, and a heightened threat response to crowded environments. In crowded settings, Plaintiff experienced a sense of being surrounded and overwhelmed, and shifted into a state of intense defensive vigilance.

d. Hull represented that Center for P.E.A.C.E. could provide Plaintiff's PTSD treatment.

e. Hull further represented that treatment through her practice would better accommodate Plaintiff's circumstances because Hull and clinicians working under her supervision already understood Plaintiff's parole conditions and could account for those conditions during PTSD treatment.

f. Plaintiff and Defendant Hull agreed on a treatment rate, taking into account what Plaintiff's BCBS copay would be. Initially, Defendant Hull handled the therapy "talk sessions" herself. Later, to reduce Plaintiff's out-of-pocket cost, Hull proposed assigning a non-independently licensed clinician[6] (Ms. Davis) working under Hull's supervision to conduct those sessions. Hull represented that she would remain responsible for Plaintiff's treatment, would supervise and review the clinician's work, and would remain Plaintiff's therapist. Under that arrangement, Plaintiff's copay for

5 Before release, Plaintiff received mental-health treatment from Dr. Lewis, a TDCJ psychiatrist, for depression, severe social anxiety, and symptoms associated with PTSD. Dr. Lewis advised Plaintiff that TDCJ could treat certain symptoms but did not provide PTSD-focused treatment, and encouraged Plaintiff to seek outside treatment after release.

6 For purposes of this Complaint, "non-independently licensed clinician" means a clinician who could provide counseling services only under supervision, for the purpose of accumulating training hours, and whose work remained subject to Hull's professional review and control.

those sessions would be waived.

g. Defendant Hull and Plaintiff specifically spoke about the "wall" between PTSD therapy and Parole Board mandated sex-offender treatment. She advised that PTSD therapy would be "normal," private therapy, without supervision by Plaintiff's parole officer.

h. On one occasion during a sex-offender group-treatment session, Hull asked Plaintiff for permission before sharing with the group an insight Plaintiff had reached during private PTSD therapy. Hull's request for permission reinforced her representation that information from the private PTSD treatment was entirely separate from the parole-mandated treatment program.

14. During the time frame relevant to Plaintiff's complaint, Plaintiff was a defendant in a state-court criminal prosecution, followed by a collateral state criminal proceeding related to Plaintiff's personal property. Specifically:

a. This Court granted conditional habeas relief in 2015, and the State commenced reprosecution under the original 1996 charges. Plaintiff exercised his Sixth Amendment right to represent himself in these criminal proceedings.

b. TDCJ released Plaintiff to mandatory supervision in October 2020, based on its calculation of Plaintiff's remaining sentences, and withdrew its detainer on Plaintiff. Plaintiff remained in pretrial custody for the ongoing state proceedings.

c. In September 2022, Plaintiff was able to make bail on the state charges and was released. Initially, the Parole Division assigned Plaintiff to a halfway house. At that point, he was being simultaneously monitored by state pretrial services and by the Parole Division.

d. Plaintiff spoke expressly to his first parole officer, full name unknown but referred to (both in person and on halfway house paperwork as "Mr. Archie"), about his concern that his work on his case might be construed as violations of terms of supervision.

e. Examples given by Plaintiff to Mr. Archie were (1) contact with prospective witnesses in the prosecution by Plaintiff's investigator, pretrial, and Plaintiff's own examination or cross-examination of those witnesses at trial, might be construed as a violation of the term of supervision prohibiting contact with a victim by any means, including third-party contact, and (2) discussion with Plaintiff's own defense team, including his investigator and psychological expert, might be construed as a violation of the term of supervision prohibiting Plaintiff from discussing sexual contact with minors with anyone other than parole authorities and his therapist.[7]

---

7 These terms of supervision were not quoted above because they were not part of the actionable conduct by Defendants.

f. Plaintiff also **expressly discussed with Mr. Archie** that the materials being used for Plaintiff's defense included lawfully possessed, non-obscene images of minors. Plaintiff noted that possession of these images was **not forbidden by the terms of supervision,** but he was concerned that a later device search might cause a parole officer unfamiliar with the legal context to get "the wrong idea."

g. Mr. Archie assured Plaintiff that the Parole Division had "no interest in preventing" his "lawful activity in court" and that his only concern was with illegal pictures, not non-obscene images lawfully possessed.

h. In April 2024, Plaintiff and the State of Texas reached a plea bargain that terminated the criminal prosecution without further prison time. Thereafter, the Houston Police Department refused to release some of Plaintiff's seized possessions, and Plaintiff initiated collateral criminal proceedings to obtain possession of them.[8]

15. On May 8, 2024, during a PTSD counseling session, Davis asked Plaintiff about stress in crowded public venues. Plaintiff gave the example of a recent in-person hearing in state court, and discussed the different levels of stress he experienced during the crowded and chaotic main-lobby security screening versus the court room itself, and how the number of people in the courtroom affected Plaintiff's stress level far more than the stakes of the hearing.

16. Davis asked for clarification about the nature of proceedings, now that the prosecution had ended. In the course of discussing those proceedings, Plaintiff mentioned an exhibit he had prepared and filed, and Davis asked to see a copy. Plaintiff sent a copy via text message during the session.

17. On May 15, Defendant Dan-Aliu, who was Plaintiff's assigned parole officer, told Plaintiff that he needed to report to the parole office that day. When Plaintiff did so, Dan-Aliu asked Plaintiff to hand over his phone, and escorted Plaintiff to Defendant Evans's office, where she handed the phone over to Evans. Plaintiff had never met with Evans before, and she did not introduce herself, but her name and supervisory status were displayed on her desk.

---

8 Plaintiff is aware the federal courts have deemed a motion to return property under the Federal Rules of Criminal Procedure is a civil proceeding, but the Texas Court of Criminal Appeals has determined that all matters collateral to a criminal prosecution are "criminal proceedings" for state purposes.

18. Defendant Evans began examining Plaintiff's phone. Up to this point, Plaintiff assumed that this was a standard device search, as had occurred on prior occasions during his supervision. But after scrolling through Plaintiff's gallery, Evans looked up at Plaintiff and demanded, "Where are these pictures you sent your therapist?"

19. It was initially unclear to Plaintiff what Defendant Evans meant by "pictures you sent your therapist." Evans attempted to call Defendant Hull in speaker mode, but reached her voicemail. Evans made clear to Plaintiff that Defendant Hull had reported Plaintiff for "pictures" sent by Plaintiff.

20. Once Plaintiff understood, based on subsequent conversation and questioning by Defendant Evans, that she was referring to Plaintiff's state court exhibit, Plaintiff briefly retrieved his phone and located a copy for her. Evans then took possession of the phone again.

21. Defendant Evans began berating Plaintiff and accusing him of violating the terms of his supervision. Plaintiff asserted that he certainly had not done so.

22. Defendant Evans then had another parole officer examine the phone. This third officer never introduced herself, and Plaintiff does not know her identity. The officer located Plaintiff's Google Photos history, which showed that Plaintiff had downloaded photos from stock photo websites in late 2023.

23. Defendant Evans demanded to know why Plaintiff had been downloading images of minors. Plaintiff responded that none of the photos were improper and that they had come from stock agencies; that downloading them had violated no term of supervision, that he had needed the photos in the course of preparing his defense, for discussion with his expert witness; and that he had expressly addressed with Mr. Archie his need to possess and review such material. Additionally, Plaintiff pointed out that he had deleted the photos from his Gallery once they were

no longer needed.

24. While Plaintiff was making these points, the parole officer going through the phone noticed pictures of a work meeting. As is common for the company, Plaintiff's employer, Mark Escamilla DBA Zuri Investigations & Attorney Services, held the work meeting at a restaurant and bought meals for the team afterward. Two employees brought their minor children to the meeting, and they were seated with their parents at the table. The minors were not interacting with Plaintiff, nor were they seated next to Plaintiff. There were multiple adults (outnumbering the minors) at the table.

25. Defendant Evans began both questioning Plaintiff and interrupting him to accuse him of breaking the rules of supervision. Plaintiff pointed out that it was a work meeting, that it was on his schedule,[9] that there was no interaction between Plaintiff and the minors, and that multiple other adults were present to supervise, including Mark Escamilla, who knew Plaintiff's entire history.

26. Defendant Evans told Plaintiff: "As soon as a minor sat anywhere near you, you should have left." Plaintiff responded, "That's ridiculous. It was a work event, a scheduled event, and I didn't even talk to them, much less be unsupervised with them. I've had a polygraph since then that verified I've not violated any of my conditions." Evans said, "I guess we know that was worthless, then, don't we?"

27. Plaintiff did not respond further, and Defendant Evans directed Defendant Dan-Aliu to use her phone and take pictures of the material on Plaintiff's phone. Dan-Aliu took Plaintiff back to her office, and Plaintiff assisted her in finding the photos again, since Dan-Aliu was unable to do so on her own.

---

9 At the time of the meeting, Plaintiff was in the Super-Intensive Supervision Program, on GPS monitoring, and all movement outside Plaintiff's home had to be preapproved and signed off on by his parole officer.

28. During this process, Defendant Dan-Aliu asked Plaintiff why he would violate the terms of his supervision, and Plaintiff emphasized, again, that he had not violated any terms.

29. Based on Plaintiff's observations of the interactions between Defendants Dan-Aliu and Evans, as well as information learned in the course of revocation proceedings thereafter, Plaintiff believes and asserts as fact that Evans directed Dan-Aliu to file revocation proceedings and that, beyond the initial directive, Evans continued to be personally involved in planning, writing, and presenting the revocation paperwork.

30. Plaintiff contacted Defendant Hull the same afternoon, and Hull asked to see the photos from Plaintiff's Google Photos history. Plaintiff retrieved them from the history and sent copies to Hull via text, as requested. Hull told Plaintiff that they could discuss the reaction of parole officials, as well as her justification for contacting parole officials, after the scheduled group counseling session on Saturday, May 18, 2024.

31. Records submitted during the revocation hearing indicate that Defendant Hull submitted paperwork to parole officials, discharging Plaintiff from her program, on Thursday, May 16, 2024; testimony at the revocation hearing indicated that Defendant Dan-Aliu personally directed Hull to discharge Plaintiff from the program. Testimony at the hearing also indicated that someone Hull talked to in the process (Plaintiff does not know if this was Dan-Aliu or Evans) represented to Hull that Plaintiff had been **taking pictures of** minors while on supervision.

32. On Friday, May 17, 2024—*after* discharging Plaintiff from her program—Defendant Hull advised Plaintiff by text that the group meeting would be online, by phone, due to power failures across Houston.

33. On Saturday, May 18, 2024—*after* discharging Plaintiff from the program—Defendant

Hull collected a fee for the session she told him to attend.

34. On Saturday, May 18, 2024—*after* discharging Plaintiff from the program at the direction of parole officials, and knowing that a revocation report was being prepared, Defendant Hull sent Plaintiff a text about the discussion planned for that day, saying that it wouldn't be necessary because there were "no revocation concerns."

35. On May 22, 2024, Plaintiff was arrested by members of an Attorney General's task force and held in the county jail without bond. In jail, Plaintiff learned for the first time that Defendant Dan-Aliu had filed revocation proceedings. Plaintiff did not learn until several days later what the actual charges were:

a. Dan-Aliu alleged that Plaintiff had unsupervised contact with minors when minors were present at the employee meeting, despite knowing that there was no evidence to support even the "contact" allegation, much less the "unsupervised" allegation.

b. Dan-Aliu alleged that Plaintiff had unsupervised contact with minors by taking photographs of minors, despite knowing that the only photographs taken by Plaintiff of minors were taken prior to his arrest in 1996, long before any supervision conditions were imposed.

c. Dan-Aliu alleged that Plaintiff violated the rules against downloading obscene material from the internet by downloading stock photos in 2023, despite knowing that the photos were not obscene as defined in the terms of supervision.

d. Dan-Aliu alleged that Plaintiff violated the rules requiring him to enroll and participate in a sex-offender treatment program, despite knowing that Plaintiff had both enrolled and participated in Defendant Hull's program and despite the only obstruction to treatment being Dan-Aliu's own order to Hull to discharge Plaintiff.

36. At a hearing, the parole officer acting as adjudicator found Plaintiff had violated the terms of his parole and recommended the sanction of remand to an Intermediate Sanctions Facility (ISF) as a punitive sanction.

37. The record indicates that the Parole Board relies on an analyst to assess the case and make recommendations to the voting members of the Board. The analyst in Plaintiff's case recommended upholding the findings of the initial adjudicator and imposing the ISF sanction,

notwithstanding that the hearing record contained no evidence supporting the charged violations or any other violation of a written term of supervision.

38. The voting members of the Board adopted the recommendation and imposed a term in ISF. Plaintiff attempted to appeal this recommendation on the grounds that the sanction was unjust, unsupported by even a scintilla of evidence, and in violation of the Constitution. The appeal documents Plaintiff submitted contained a complete summary of events and points of error.

39. Counsel for the Board, however, wrote Plaintiff a letter stating that the Board considered appeals only when there was an actual revocation, not merely a punitive incarceration in ISF.

40. As the direct result of actual conduct by Defendants Dan-Aliu, Evans, and Hull, including, but not limited to,

a. Hull's breach of confidentiality;

b. Dan-Aliu's and Evans's misrepresentation of Plaintiff's conduct as a violation, when in fact both knew that their representations were false and that there was no evidence Plaintiff violated any term of parole; and,

c. Hull's collaboration with Dan-Aliu and Evans not only in the breach of confidentiality but in the "discharge" directly ordered by Dan-Aliu for the purpose of creating a "violation" that did not exist,

Plaintiff was incarcerated from May 22, 2024, through September 20, 2024. Due to that incarceration, Plaintiff suffered the damages set forth in Part V, below.

41. Plaintiff remains subject to mandatory supervision and to continuing enforcement of supervision conditions by the TDCJ Parole Division and the Board. Plaintiff's injuries and continuing risk of future injury were caused in part by ongoing policies, practices, customs, and failures of the offices now held by Defendants Ruiz De Velasco and Moberley, sued in their official capacities only. These ongoing practices include:

a. The failure to adopt, implement, or enforce standards requiring parole officers, supervisors, analysts, and Board decisionmakers to identify the specific written condition allegedly violated and the evidence supporting each element of that violation before initiating, recommending, or approving punitive sanctions.

b. The failure to train or require parole officials to distinguish written parole conditions from ad hoc unwritten expansions of those conditions, including treating non-obscene images as prohibited obscene material, treating incidental presence around supervised minors as "unsupervised contact," and treating a provider-directed discharge from treatment as a parolee's failure to participate.

42. These policies, practices, customs, and failures allowed the enforcement actions described above and, unless corrected, continue to expose Plaintiff to **arbitrary enforcement of conditions that do not give fair notice of the conduct being punished.** Plaintiff seeks prospective declaratory and injunctive relief against Ruiz De Velasco and Moberley in their official capacities to require constitutionally adequate standards, training, and procedures going forward.

## IV.

## Causes of Action

43. Plaintiff incorporates the preceding "Facts" section of this pleading by reference and adopts it for all purposes.

### *A. Count I — Violation of Due Process (42 U.S.C. § 1983)*

44. Defendants Tosin Dan-Aliu and Quanita Evans, acting under color of state law, deprived Plaintiff of rights secured by the Fourteenth Amendment by deliberately, intentionally, or recklessly misrepresenting Plaintiff's lawful conduct as violations of supervision conditions and by arbitrarily expanding and manipulating those conditions to create a "violation" where none existed (*e.g.*, directing Defendant Hull to discontinue, and discharge Plaintiff from therapy, and then naming this a violation by Plaintiff rather than a result of Defendants' own improper directives), with the goal of depriving Plaintiff of liberty to which the laws entitled him.

***B. Count II — Retaliation for and Interference with Protected Litigation Activity (42 U.S.C. § 1983)***

45. Defendants Tosin Dan-Aliu and Quanita Evans, acting under color of state law, deprived Plaintiff of rights secured by the First, Sixth, and Fourteenth Amendments by interfering with Plaintiff's ability to prepare and present his legal defense in criminal court, and to litigate the State's retention of Plaintiff's lawful property beyond the conclusion of criminal proceedings, including by treating lawful litigation materials and activity as parole violations, by punishing Plaintiff for his litigation activity, and by retrospectively deeming Plaintiff's preparation of trial materials (including a Summary Exhibit prepared with full knowledge and participation of the State, in the person of its Assistant District Attorney) a "parole violation."

***C. Count III — Denial of First Amendment Protections (42 U.S.C. § 1983)***

46. Defendants Tosin Dan-Aliu and Quanita Evans, acting under color of state law, deprived Plaintiff of rights secured by the First Amendment by punishing Plaintiff for his lawful creative activity before Plaintiff was even arrested or convicted, much less placed on parole, by alleging in revocation proceedings that Plaintiff was *currently* "taking pictures of children" when referring to Plaintiff's photography work in the 1990s and by chilling further expressive conduct not forbidden by parole rules.

***D. Count IV — Conspiracy and Joint Action (42 U.S.C. § 1983 )***

47. Defendants Tosin Dan-Aliu, Quanita Evans, and Jana Hull acted in concert to deprive Plaintiff of constitutional rights and protections by sharing information gained by Hull from private therapy sessions, communicating about that information, and creating the appearance of a parole violation through coordinated actions by removing Plaintiff from therapeutic treatment, then charging Plaintiff with misconduct for their own manipulation of the process.

*E. Count V — DTPA*

48. Defendant Hull violated the Deceptive Trade Practices Act by billing Plaintiff and his private insurance for mental-health services and assuring Plaintiff that confidentiality applied, then breaching confidentiality without cause, to Plaintiff's detriment and by "discharging Plaintiff from therapy" at the direction of a non-practitioner with no medical credentials, while simultaneously not informing Plaintiff of the "discharge" and continuing to accept fees for the discontinued services.

***F. Count VI — Fraud and Fraudulent Inducement***

49. Defendant Hull represented that she was providing private therapeutic services, separate and distinct from parole-mandated group therapy, for a mental-health condition unrelated to sexual offending, with the standard protections, benefits, and treatments available in private therapy (including confidentiality). Plaintiff relied on these representations and engaged in the "private therapy" at his own expense (private health insurance plus copay). Plaintiff was damaged when Defendant Hull shared protected, confidential information learned from the private therapy sessions with parole officials, then acted in concert with those officials to further damage Plaintiff.

***G. Count VII — Breach of Confidentiality / Breach of Fiduciary Duty***

50. Defendant Hull breached the duty of confidentiality by creating a therapist/patient relationship with Plaintiff for a mental-health condition unrelated to sexual offending, on a private basis, billed to Plaintiff and his private health insurance, then revealing information gained from a private therapy session to parole officials, without Plaintiff's consent and to Plaintiff's detriment and pecuniary loss.

***H. Count VIII — Unjust Enrichment / Money Had and Received***

51. Defendant Hull enriched herself to Plaintiff's detriment by collecting money from Plaintiff for "private, individual therapy" with full confidentiality protection when in fact she did not provide the confidentiality-protected private therapy she represented she would provide, and by continuing to collect money from Plaintiff for group therapy after "discharging" Plaintiff from such therapy without notice to Plaintiff that he was paying for a discontinued service.

### *I. Count IX — Negligent Misrepresentation*

52. Defendant Hull negligently misrepresented the confidentiality standard of the private, individual therapy provided to Plaintiff for a mental-health condition unrelated to sexual offending, upon which Plaintiff relied when engaging in therapy, and Plaintiff suffered pecuniary loss as a result.

### *J. Count X — Declaratory and Injunctive Relief (42 U.S.C. § 1983)*

53. Defendants Ruiz De Velasco and Moberley, sued in their official capacities only, are responsible through their offices for the ongoing enforcement, administration, correction, and prospective application of the policies, practices, training standards, and review procedures described above. Those ongoing policies and practices allow arbitrary enforcement of parole conditions in violation of the Fourteenth Amendment by permitting parole officers, supervisors, analysts, and Board decisionmakers to impose punitive sanctions based on unwritten expansions of written supervision conditions. Plaintiff seeks prospective declaratory and injunctive relief requiring constitutionally adequate standards, training, and review procedures to prevent future enforcement of parole conditions in the arbitrary manner described in this Complaint.

## V.

## <u>Damages and Relief Sought</u>

54. From Defendants named in their personal capacity, Plaintiff seeks recovery of actual

damages, including but not limited to loss of liberty resulting from wrongful confinement; lost income; fees, penalties, and financial obligations incurred as a result of lost income; damage to credit rating and financial standing; and other economic losses proximately caused by Defendants' conduct.

55. Further, from Defendants named in their personal capacity, Plaintiff seeks recovery for mental anguish and emotional distress caused by Defendants' conduct, including the stress, humiliation, and anxiety associated with wrongful confinement and misuse of confidential information.

56. Further, from Defendants named in their personal capacity, Plaintiff seeks exemplary damages as allowed by law based on Defendants' knowing, intentional, and/or reckless conduct.

57. Further, from Defendant Hull, Plaintiff seeks all damages available under the Texas Deceptive Trade Practices Act, including economic damages, additional damages for knowing or intentional conduct, and any other relief authorized by statute.

58. Further, Plaintiff seeks restitution and disgorgement of all amounts paid to Defendant Hull for services that were not provided or were obtained through misrepresentation.

59. Further, from the Defendants named in their official capacities only, Plaintiff seeks declaratory and injunctive relief to prevent the continued enforcement of unconstitutional policies and practices described herein.

60. Plaintiff seeks recovery of attorney's fees as permitted by law, including but not limited to fees recoverable under 42 U.S.C. § 1988 and the Texas Deceptive Trade Practices Act.

61. Plaintiff seeks recovery of costs of court, prejudgment and postjudgment interest, and all other relief to which he may be justly entitled.

## VI.

## Conditions Precedent

62. Plaintiff asserts that all conditions precedent have been performed or have occurred.

## VII.

## Prayer

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests he have judgment against Defendants, jointly and severally where applicable, for:

a. Actual damages;

b. Damages for mental anguish and emotional distress;

c. Exemplary damages as permitted by law;

d. All damages available under the Texas Deceptive Trade Practices Act, including additional damages for knowing or intentional conduct;

e. Restitution and disgorgement of amounts wrongfully obtained by Defendant Hull;

f. Reasonable and necessary attorney's fees as permitted by law, including but not limited to fees recoverable under 42 U.S.C. § 1988 and the Texas Deceptive Trade Practices Act;

g. Costs of court;

h. Prejudgment and postjudgment interest as allowed by law;

i. Declaratory and injunctive relief preventing the continued enforcement of unconstitutional policies and practices described herein; and

j. All such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

Matthew James Leachman
2505 Reid St Apt A
Houston, Texas 77026
832-960-3665
leachman.defense@gmail.com

**PLAINTIFF PRO SE**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served to and upon the following:

J. Fisk Beckham
Assistant Attorney General
Law Enforcement Defense
Office of the Attorney General of Texas
PO Box 2548, Capitol Station
Austin, TX 78711-2548
512-500-1492
Fisk.beckham@oag.texas.gov

Derrell Wright
TBC 24037744
2402 Rosedale St
Houston, TX 77004-6018
713-552-0600
attorneydwright@gmail.com

via U.S. Mail, first-class postage prepaid, on this 13th day of July, 2026.

**Plaintiff**