**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **MATTHEW LEACHMAN,** *Plaintiff,* | § | |
| | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:26-CV-04679** |
| | § | |
| | § | |
| **TOSIN DAN-ALIU ET. AL,** *Defendants.* | § | |
| | § | |

# DEFENDANTS' MOTION TO DISMISS

Tosin Dan-Aliu ("Dan-Aliu"), Quanita Evans ("Evans"), Monica Ruiz de Velasco ("Velasco"), and Marsha Moberley ("Moberley"), (collectively "Defendants"), through the Office of the Attorney General of Texas, files this Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I. Statement of the Case

Plaintiff Matthew James Leachman ("Plaintiff"), proceeding pro se, initially filed his Petition in Harris County, on May 21, 2026. ECF No. 1 at 19-20. Defendants removed the case from the 295th Judicial District, in Harris County TX, to the Southern District of Texas, Houston Division. ECF No. 1 at 1. Plaintiff alleges that his First, Sixth, and Fourteenth Amendment rights were violated by the actions of all named Defendants in this matter. ECF No. 7 at 14. Plaintiff is a parolee under the supervision of Texas Department of Criminal Justice ("TDCJ"), who was incarcerated for Indecency with a Child by Contact, and Aggravated Sexual Assault of a Child[1]. As a parolee for a sex offense, Plaintiff is required to adhere to specific rules and regulations. ECF No. 7 at 3-4. These rules include but are not limited to mandatory sex offender treatment, prohibiting access to obscene[2] material on the internet, prohibiting communications or contact with minors, owning or operating camera equipment without express permission, and prohibiting access to social media. *Id.* Plaintiff was supervised by Dan-Aliu and Evans. *Id* at 2.

---

[1] *See* Texas Sex Offender Registry, https://sor.dps.texas.gov/PublicSite/Search/Rapsheet?Sid=05821583
[2] "Obscene", as defined by § 43.21 of the Texas Penal Code

In addition to mandated group treatment sessions, Plaintiff engaged in regular counseling sessions with Jana-Gaston Hull ("Hull") and "Ms. Davis", a co-worker of Hull. *Id* at 5. After Plaintiff began his counseling sessions, Hull contacted Dan-Aliu and Evans, warning them of a possible parole violation. *Id.* at 10. Plaintiff revealed in therapy that he used the internet to access photos of children. *Id.* Plaintiff alleges that said photos are not obscene, and not violative of his parole. *Id.* at 6-7. Plaintiff, claims "Mr. Archie," his first assigned parole officer, advised on the various limitations of his parole and what he was allowed to possess in preparation for separate state case. *Id.* Plaintiff had pursued a case against the state to reclaim property that was seized during Plaintiff's arrest for child-sex crimes in the 1990s. *Id.* at 7.

On or around May 15, 2024, Plaintiff reported to his parole officers to speak with Evans and Dan-Aliu. ECF No. 7 at 7. Evans and Dan-Aliu alerted Plaintiff of a parole violation and searched his phone. *Id.* 7-8. The search revealed two alleged parole violations. *Id.* at 8-9. The first consisted of images of children that Plaintiff downloaded from the internet, that he claims were being used for litigation purposes. *Id.* at 8. Plaintiff admits the photos are of children, but asserts that they are not obscene because they were downloaded from stock photo websites. *Id.* The second alleged violation consisted of photos taken in a public restaurant which included children. *Id.* at 9. Although Plaintiff is forbidden from photographing minors, interacting with minors, and communicating with minors, he claims that these photos were not violative of his parole. *Id.* at 3-4 and 9. Plaintiff argues that his parole restrictions did not apply to these photos, because he was attending a work lunch which he had informed the parole office of in advance. *Id.*

Plaintiff was arrested on May 22, 2024, after Dan-Aliu initiated parole revocation proceedings against Plaintiff. *Id.* at 11. Plaintiff alleges that he was charged with the following violations: unsupervised contact with minors at a work lunch referenced above, a separate instance of unsupervised contact with minors where Plaintiff photographed the children in question, downloading

images of children off the internet, and failure to enroll and participate in a sex-offender treatment program. *Id.* At the hearing, the parole officer acting as the adjudicator found that Plaintiff had violated the terms of his parole and recommended the punitive sanction of being held in an Intermediate Sanction Facility ("ISF"). *Id.* The Parole Board upheld the ISF sanction for Plaintiff's alleged parole violations. *Id.* at 12. Plaintiff attempted to appeal his case but was informed that the appeal process is only available when a parolee has their parole completely revoked, rather than receiving a punitive sanction. *Id.* Plaintiff was confined between May 22, 2024, and September 20, 2024, because of his punitive sanction. *Id.* Plaintiff remains subject to the terms and conditions of his parole. *Id.*

## II. Causes of Action

Plaintiff alleges that Dan-Aliu and Evans denied Plaintiff due process and violated his Fourteenth Amendment rights. *Id.* at 13. Plaintiff claims that Dan-Aliu and Evans misrepresented Plaintiff's "lawful" conduct as a violation of his parole conditions. *Id.* Plaintiff alleges that Dan-Aliu and Evans directed Hull to discharge Plaintiff from therapy. *Id.* After being discharged, Plaintiff alleges that Dan-Aliu and Evans subsequently asserted Plaintiff was in violation of his parole for not being enrolled in sex offender treatment program that Hull previously provided. *Id.*

Plaintiff further alleges that Dan-Aliu and Evans, acting under color of state law, retaliated and interfered with Plaintiffs protected litigation activities pursuant to 42 U.S.C § 1983. Plaintiff also claims that Dan-Aliu and Evans deprived Plaintiff of his First, Sixth, and Fourteenth Amendment Rights by interfering with Plaintiff's ability to litigate the state's retention of Plaintiff's property and or his criminal matter. *Id.* at 11 and 7. Plaintiff alleges that Dan-Aliu and Evans have punished Plaintiff by retrospectively deeming Plaintiff's litigation activities as a parole violation. *Id.* Plaintiff categorizes the downloading photos of children off the internet and using those photos to create and file a "summary exhibit" in a criminal court as "litigation activities." *Id.* at 6 and 8.

Plaintiff alleges that Dan-Aliu and Evans deprived Plaintiff of his First Amendment right to engage in the "lawful creative activity" of taking photos of children. *Id.* at 14. Plaintiff asserts that Dan-Aliu and Evans have chilled expressive conduct not forbidden by the current rules of his parole. *Id.* Plaintiff disputes that his possession of the photos were a violation because they were taking of children in the 1990's prior to his conviction for child-sex crimes. *Id.*

Additionally, Plaintiff accuses Dan-Aliu, Evans, and Hull of conspiracy and joint action, pursuant to 42 U.S.C. § 1983, by allegedly depriving Plaintiff of his constitutional rights and protections. *Id.* Plaintiff alleges that Dan-Aliu, Evans, and Hull created the appearance of a parole violation by removing Plaintiff from private counseling sessions with Hull and then charged Plaintiff with misconduct after "manipulation of the process". *Id.*

Separately, Plaintiff alleges that Velasco and Moberley created policies, both written and unwritten, that allow arbitrary enforcement of parole rules in violation of the Fourteenth Amendment. *Id.* at 16. Plaintiff alleges that this arbitrary enforcement of parole rules does not give fair notice of the conduct being punished. *Id.* at 13. Additionally, Plaintiff claims that Velasco and Moberley failed to impose standards, training, and procedures that protect the Fourteenth Amend rights of parolees warranting injunctive and declaratory relief. *Id.* Specifically, Plaintiff alleges that these ongoing policies allow parole officers and parole board members to impose punitive sanctions based on unwritten expansions of written supervision conditions. *Id.*

Plaintiff brings claims against Moberley and Velasco in their official capacity, and against Dan-Aliu, Evans, and Hull in their individual capacity. *Id.* at 2.

## III. Requested Relief

For Defendants named in their individual capacity, Plaintiff seeks recovery of actual damages including but not limited to loss of liberty resulting from wrongful confinement, lost income, financial obligations incurred because of lost income, damage to credit rating and financial standing, and other

economic losses proximately caused by Defendants' conduct. *Id.* at 16-17. Additionally, Plaintiff seeks damages for mental anguish and emotional distress allegedly caused by Defendants' conduct. *Id.* Plaintiff also seeks exemplary damages against all Defendants sued in their individual capacity based on their alleged intentional or reckless conduct. *Id.* For Moberley and Velasco, sued in only their official capacity, Plaintiff seeks declaratory and injunctive relief to prevent the continued enforcement of alleged unconstitutional policies and practices. *Id.*

## IV. Arguments and Authorities

### A. Standard of Review

Federal Rule 12(b)(1) permits a party to move for dismissal for lack of subject matter jurisdiction. In determining whether jurisdiction exists, a court "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *CleanCOALition v. TXU Power*, 536 F.3d 469, 473 (5th Cir. 2008). "A lack of standing is a lack of subject matter jurisdiction." *Lutostanski v. Brown*, 88 F.4th 582, 587 (5th Cir. 2023) (internal citation omitted).

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal when an opposing party fails to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152-53 (5th Cir. 2010). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. 662 at 678 (citing *Twombly*, 550 U.S. at 556). Thus, while the complaint need not contain

"detailed factual allegations," it must go beyond mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Iqbal*, 556 U.S. at 679.

**B. Plaintiff lacks standing to bring a Declaratory Judgment action because he does not plead future harm.**

"In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." Bauer v. Texas, 341 F.3d 352, 358 (5th Cir. 2003) (internal citations omitted). In an action brought under the Declaratory Judgment Act the standing requirement can be met by establishing "actual present harm or a significant possibility of future harm," *Bauer v. Texas*, 341 F.3d 352, 357-58 (5th Cir. 2003) (quoting *Peoples Rights Org. v. City of Columbus*, 152 F.3d 522, 527 (6th Cir. 1998)), "even though the injury-in-fact has not yet been completed," *id.* (quoting *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 280 (6th Cir. 1997)). The Supreme Court has stated that "[a]n allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. at 157-58 (quoting *Clapper v. Amnesty Int'l USA,* 568 U.S. at 414 n.5).

Plaintiff has not properly pled that there is actual present harm or significant possibility of future harm. Plaintiff alleges that current parole policies and practices allowed insufficient evidence of each element of a parole violation to pass muster for engaging in revocation proceedings. ECF No. 7 at 12-13. He further alleges that Velasco and Moberley failed to prevent parole officials from distinguishing between written parole conditions and "ad hoc unwritten expansions" of parole conditions. *Id.* Plaintiff makes a general conclusory allegation that Velasco and Moberley's policies and

practices continue to expose Plaintiff to arbitrary enforcement of conditions that do not give fair notice of the conduct being punished. *Id.*

Plaintiff was released from the ISF in September 2024, Plaintiff has not alleged any current or ongoing constitutional deprivations. *See generally* ECF No. 7. Plaintiff has not pled that Defendants have interfered or retaliated against Plaintiff for any of his lawful litigation activities. *Id.* Plaintiff has not pled that Defendants' conduct has created a present or ongoing chilling effect on the lawful exercise of any of his constitutional rights, limited by Plaintiff's status as registered sex offender. *Id.* Since his confinement, Plaintiff has not cited a single instance of "arbitrary enforcement of conditions" related to his parole or of others. *Id.* Furthermore, Plaintiff's requests for declaratory and injunctive relief to remedy the alleged deficiencies of the parole office and parole officials' conduct, are undermined by his admission that he took photos of children in a public restaurant, which is clearly violative of his parole under Special Condition X. Therefore, because Plaintiff does not allege any present harm or significant possibility of future harm, his claim for declaratory relief fails.

### C. Defendants Moberley and Velasco are immune from liability.

"[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Sovereign immunity contains two distinct principles, immunity from liability and immunity from suit. *Tex. Parks & Wildlife Dep't v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004); *Meyers ex rel. Benzig v. Tex.*, 410 F.3d 236, 252–53 (5th Cir. 2005). By removing a case to federal court, a state defendant waives immunity from suit, but may continue to assert immunity from liability even after removal. *Meyers ex rel. Benzig*, 410 F.3d at 255; *Cephus v. Tex. Health & Human Servs. Comm'n*, 146 F. Supp.3d 818, 827–28 (S.D. Tex. 2015). Sovereign immunity from liability is not jurisdictional and must be pleaded as an affirmative defense. *Cephus*, 146 F. Supp.3d at 828. "Still, the Supreme Court has often used 'Eleventh Amendment immunity' as a synonym for the States' broader constitutional sovereign immunity."

*Sullivan v. Texas A&M Univ. Sys.*, 986 F.3d 593, 596 n.1 (5th Cir. 2021). Although often referred to as "Eleventh Amendment immunity" as a convenient shorthand, the phrase is "something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment." *Alden v. Maine*, 527 U.S. 706, 713 (1999). "Rather, as the Constitution's structure, its history, and the authoritative interpretations by [the Supreme] Court make clear, the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today as altered by the plan of the Convention or certain constitutional Amendments." *Id.*

Had this suit been originally filed in federal court it would be barred entirely and at the threshold by the Eleventh Amendment's recognition of Texas' inherent sovereign immunity. *College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 669-70 (1999*); Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1982). By removing this matter from state to federal court, however, Defendants invoked this Court's jurisdiction and waived the prohibitions of the Eleventh Amendment. *Lapides v. Bd. Of Regents of Univ. Sys. Of Ga.*, 535 U.S. 613, 624 (2002). While voluntary removal to federal court waives sovereign immunity to suit, states and their agencies retain a separate sovereign immunity to liability in claims brought under 42 U.S.C. § 1983. *Meyers v. Texas*, 410 F.3d 236, 252-253 (5th Cir. 2005). "[T]he Constitution permits and protects a state's right to relinquish its immunity from suit while retaining its immunity from liability, or vice versa …" *Id.* at 255. The Supreme Court holds that "a State is not a 'person' against whom a § 1983 claim for money damages may be asserted." *Lapides*, 535 U.S. at 617 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)). This rule extends to "arms of the state" such as state agencies. *Howlett v. Rose*, 496 U.S. 356 (1990). "Suits against state officials in their official capacity therefore should be treated as suits against the State". *Hafer v. Melo*, 502 U.S. 21, 25, (1991) Therefore, Plaintiff's claims against Defendants Velasco and Moberley are barred, because they cannot be found liable in their official capacity.

**D. As a board member, Defendant Moberley has absolutely immunity from liability for her actions in parole revocation proceedings.**

Plaintiff brought suit under U.S.C § 1983, alleging that that Defendant's Dan-Aliu and Evans misapplied Plaintiff's parole conditions beyond their terms, asserting violations unsupported by the conditions themselves. ECF No 7. at 14. However, Dan-Aliu and Evans are not directly responsible for the actions and decisions of the Texas Board of Pardons and Paroles, as well as Plaintiff's subsequent confinement in an ISF. Board Members of the Texas Board of Pardons and Parole are the ones responsible for revocation proceedings involving parolees, as well as assessing sanctions against parolees who are in violation of their parole. *See generally* Texas Government Code Sec. A 508.0441 & Texas Government Code Sec. A 508.281. Plaintiff has not directly challenged Defendant Moberley or any other members of the Texas Board of Pardons and Parole, for finding that Plaintiff violated his parole. Even if Plaintiff were to challenge the board's conduct, his challenge would fail because parole board members have absolutely immune from liability for their conduct in individual parole decisions when they are exercising their decision-making powers. *Farrish v. Mississippi State Parole Bd.,* 836 F.2d 969, 973–76 (5th Cir.1988); *see also Johnson v. Kegans,* 870 F.2d 992, 995–96 (5th Cir.); *Serio v. Members of La. State Bd. of Pardons,* 821 F.2d 1112, 1114 (5th Cir.1987). In *Farish,* the Fifth Circuit stated, "under the law of this circuit, parole board members must receive absolute immunity in a suit for damages by a parolee alleging that revocation procedures violated his right to due process. *Farrish* F.2d, at 975. Therefore, Moberley is entitled to absolute immunity in suits for damages.

**E. Plaintiff cannot recover damages against Defendants under the Heck bar doctrine.**

In *Heck v. Humphrey*, the Supreme Court held that a plaintiff seeking to recover damages under Section 1983 for an allegedly "unconstitutional conviction, imprisonment, or other harm caused by actions whose unlawfulness would render a conviction or sentence invalid . . . must prove that the

conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determinations, or called into question by a federal court's issuance of a writ of habeas corpus [under] 28 U.S.C. § 2254." 512 U.S. 477, 486–87 (1994). "A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." *Id.* at 487 (emphasis in original). If a judgment in favor of the plaintiff would "necessarily imply the invalidity of his conviction or sentence," the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence already has been invalidated. *Id.* The court reasoned that Section 1983 damage claims which call into question the lawfulness of conviction or confinement are barred, lest those claims "permit a collateral attack on the conviction through the vehicle of a civil suit." *Id.* at 484.

Even if a complaint is subject to dismissal under *Heck*, it remains appropriate for district courts to resolve the question of immunity before reaching the *Heck* analysis. *Littles v. Bd. of Pardons & Paroles Div.*, 68 F.3d 122, 123 (5th Cir. 1995). The *Heck* bar also applies to claims for damages related to constitutional violations stemming from parole revocation proceedings. *See McGrew v. Texas Bd. of Pardons & Paroles*, 47 F.3d 158, 161 (5th Cir. 1995). Similarly, *Heck* applies to claims for declaratory and injunctive relief. *Wilkinson v. Dotson*, 544 U.S. 74, 80–81, (2005). "A state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Id.* at 81–82. In the case of parole revocation, the Section 1983 action is subject to dismissal under *Heck* absent a showing that the confinement resulting from the parole revocation has been invalidated by a state or federal court. *McGrew*, 47 F.3d at 161.

In *Littles*, the plaintiff's claims are of a similar nature to Plaintiff Leachman's claims here. The plaintiff in *Littles* attempted to collaterally attack the validity of the incarceration resulting from his

parole revocation hearing. *Littles*, 68 F.3d at 122. The court held, "Littles has questioned the validity of the confinement resulting from his parole-revocation hearing, and he has not alleged that the Board's decision has been reversed, expunged, set aside, or called into question, as *Heck* mandates." *Id.* "The district court did not abuse its discretion when it dismissed Littles's complaint." *Id.* By confinement, the court was referring to Littles' subsequent incarceration rather than confinement in an ISF. *Id.*

Plaintiff alleges that he suffered damages in the form of pecuniary harm, loss of liberty, mental anguish, and emotional distress, while in confinement at an ISF for his alleged parole violation. ECF No. 7 at 17. *Heck* bars Plaintiff from recovery because his alleged unlawful confinement in the ISF and harm suffered therein stem from parole revocation proceedings. *McGrew*, 47 F.3d at 161; ECF No. 7 at 17. Plaintiff's current suit amounts to a collateral attack on the parole violation assessed against him, though the vehicle of a § 1983 civil suit. *Heck* holds that, "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. *Heck*, 512 U.S. at 486 – 487. Plaintiff has failed to prove that his conviction, sentence or parole violation has been reversed whatsoever. Thus, Plaintiff's § 1983 claims are barred under *Heck*.

### F. Plaintiff has failed to establish constitutional violations under the First, Sixth, and Fourteenth Amendments.

Plaintiff claims in his Amended Complaint that Defendants violated his First Amendment rights of creative expression and access to courts, his Sixth amendment rights, and his Fourteenth Amendment rights of due process and right to liberty. ECF No. 7 at 13-14. Undersigned counsel will

address each in turn.

**i. Plaintiff fails to state a valid First Amendment claim regarding access to courts, or creative expression.**

"To state a cognizable First Amendment claim, a prisoner must demonstrate actual injury resulting from an alleged denial of access to the courts. *Lewis*, 518 U.S. at 351; *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999). Thus, to properly state a First Amendment claim for denial of access to the courts, a plaintiff must demonstrate that his position as a litigant was prejudiced by the defendant's actions. *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996). Absent an actual injury, a plaintiff lacks standing to pursue a claim of denial of access to the courts. *Lewis*, 518 U.S. at 349." *Brewer v. Guidry,* No. CV H-21-3717, 2021 WL 5585736, at *2 (S.D. Tex. Nov. 29, 2021).

Plaintiff alleges that Dan-Aliu and Evans interfered with and retaliated against him for his litigation activities. At the time revocation proceedings began Plaintiff had already prepared and filed the "summary exhibit" which he claims was the basis for his parole violation. *Id.* at 7. Plaintiff has not pled that his position as a litigant was prejudiced by Defendants' actions. Rather, Plaintiff alleges that Defendants retrospectively deemed his "lawful litigation activities" as parole violations, and initiated proceedings against him. *Id.* at 14. Further, Plaintiff has not pled that his confinement in the ISF deprived him of his First Amendment right to access courts. *See generally* ECF No. 7. Rather, Plaintiff's requests for damages, declaratory and injunctive relief focus on remedying Plaintiff's alleged harm suffered while in confinement, and to prevent parole officers from arbitrary enforcement of parole violations. ECF No. 7 at 13-17. Plaintiff has failed to plead an actual injury; therefore, he lacks standing to pursue a claim of denial of access to the courts.

Plaintiff asserts an additional First Amendment claim alleging that he was punished for his lawful creative activity, which resulted in a chilling of further expressive conduct not forbidden by

parole rules. Plaintiff has not specifically pled what type of expressive conduct is being chilled by Defendants' actions. *See generally* ECF No. 7. Yet, Plaintiff failed to establish that his First Amendment Rights have been severely limited by status as a registered sex offender. The expressive conduct Plaintiff refers to is likely the art of photography, which Plaintiff is not permitted to engage in unless he seeks approval in writing from his parole supervisors.[3] Under Special Condition X of Plaintiff's parole, he is forbidden from owning or operating a camera unless approved in writing by his parole officer, in addition to other restrictions. *Id.* Plaintiff has the burden of proving that his conduct was not violative of his parole or that the terms of his parole entitle him to take or possess photos of children. Plaintiff has failed to specify how his First Amendment Rights have been chilled by Defendants' conduct and therefore fails to state a claim upon which relief may be granted.

**ii. Plaintiff fails to state a valid Fourteenth Amendment claim.**

Plaintiff claims Defendants generally violated his due process rights under the Fourteenth Amendment. CITE. In *Morrissey* the court established the due process requirements for parole revocation hearings by stating, "[o]ur task is limited to deciding the minimum requirements of due process. They include (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." *Morrissey v. Brewer*, 408 U.S. 471, 488-89 (1972).

Plaintiff alleges that Dan-Aliu and Evans deprived Plaintiff of his Fourteenth Amendment

[3] https://www.tdcj.texas.gov/bpp/policies_directives/POL_145.263.pdf, Section E, 2- Computer, Photographic Equipment or Electronic device. (Last accessed 7/24/2026)

rights but fails to specify how his rights were violated. Plaintiff does not assert that he lacked notice, or an opportunity to be heard by an impartial tribunal. *See Generally* ECF No. 7. Rather, Plaintiff vaguely states that Defendant Dan-Aliu and Evans' conduct deprived Plaintiff of liberty to which he is entitled. *Id.* at 13. The only specific deficiency Plaintiff identified regarding the revocation hearing was that the resulting sanctions were unsupported by a "scintilla of evidence" *Id.* at 12. Yet, Plaintiff admitted in his Amended Complaint that he engaged in unsupervised contact with children at a public restaurant, did not inform the parents of the children of his sex offender status, and that he took photos of the adults and children present at the lunch in violation of his parole without any justification for doing so, all of which are *prima facie* parole violations. *Id.* at 9. Plaintiff also refers to appeal documents he submitted, which contain a complete summary of events and points of error of the revocation hearing. *Id.* at 12. However, despite having the ability to do so, Plaintiff has failed to attach these appeal documents, or any records related to the parole revocation hearing whatsoever. Rather, he makes general conclusory allegations that the findings were unsupported by evidence, unjust, and in violation of the constitution. *Id.*

Additionally, as referenced above, Dan-Aliu and Evans do not have the capacity to unilaterally find Plaintiff to be in violation of his parole. Rather, the Texas Board of Pardons and Parole, has the ultimate say in revocation proceedings and terms and conditions of parole. *See* Texas Government Code Sec. A 508.0441 & Texas Government Code Sec. A 508.281. For Plaintiff to allege Dan-Aliu and Evans deprived him of his liberty interest is incorrect or impossible, because they do not have the capacity, per the Texas Government Code, to confine Plaintiff. *Id.*

As explained above, Plaintiff has failed to establish that the parole violations assessed against him were unconstitutional. Therefore, Plaintiff fails to state a valid Fourteenth Amendment claim upon which relief can be granted.

**iii. Plaintiff Sixth Amendment claim is invalid and misplaced.**

Plaintiff vaguely alleges that his Sixth Amendment rights were violated by Defendant's conduct. ECF No. 7 at 14. However, this is a civil proceeding, and the Sixth Amendment generally relates to the right to a speedy criminal trial for criminal defendants or the confrontation clause. *See generally* U.S. Const. amend. VI. Plaintiff failed to plead any factual basis for a valid Sixth Amendment claim thus warranting dismissal.

**G. Plaintiff offers no facts to support his conspiracy claim.**

Conspiracy claims asserted under § 1983 require plaintiffs to prove "(1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Armstrong v. Ashley*, 60 F.4th 262, 280 (5th Cir. 2023) To prove a conspiracy under § 1983, a plaintiff must allege facts that indicate (1) there was an agreement among individuals to commit a deprivation, and (2) that an actual deprivation occurred. *Estate of Farrar v. Cain,* 941 F.2d 1311, 1313 (5th Cir. 1991) (requiring that a plaintiff must prove "an actual deprivation of a constitutional right"); *see also Jabary v. City of Allen*, 547 F. App'x 600, 610 (5th Cir. 2013).. "Mere conclusory allegations of conspiracy cannot, absent reference to material facts, survive a motion to dismiss." *Arsenaux v. Roberts,* 726 F.2d 1022, 1024 (5th Cir. 1982) (cited favorably, *Brown v. Tull*, 218 F.3d 743, 2000 WL 821404 at *4 (5th Cir. 2000)). "To establish a cause of action based on conspiracy a plaintiff must show that the defendants agreed to commit an illegal act." *Arsenaux,* 726 F.2d at 1024.

**i. Plaintiff has failed to prove an agreement existed amongst the Defendants to deprive him of constitutional rights**.

Plaintiff, *inter alia*, alleges that Dan-Aliu, Evans, and Hull acted in concert to deprive Plaintiff of his constitutional rights by using the information gained by Hull in private therapy sessions to create the appearance of a parole violation, removing Plaintiff from therapeutic treatment, and then charging Plaintiff with a parole violation. ECF No. 7 at 14. On May 8, 2024, Plaintiff revealed in a counseling

session with Ms. Davis, a co-worker of Hull, that he had filed an exhibit in court, which allegedly included images of minors he downloaded off the internet. ECF No. 7 at 7. On May 15, 2024, Plaintiff reported to his parole office to meet with Evans and Dan-Aliu, where they requested to inspect his phone and found at least two potential parole violations on Plaintiff's cell phone. *Id.* at 7-8. The first alleged parole violation consisted of alleged stock images of children downloaded from the internet, that Plaintiff claims is non-obscene material, used for an exhibit in a separate case to retrieve property from the state. *Id.* The second alleged parole violation consists of photos, which include minors, that Plaintiff took during a "work meeting" at a public restaurant. Id. at 9.

As referenced above, Under Special Condition X of Plaintiff's parole restrictions, he is forbidden from owning, operating, and using a camera unless its specific use is approved by a parole supervisor, which he does not assert here. *Id.* Plaintiff is also prohibited from unsupervised contact with a minor, unless the contact is pre-approved by a supervising parole officer, and a chaperone is present for any authorized contact. *Id.* Although two children were present at his lunch table, Plaintiff alleges no violations occurred, because their parents were present, he did not interact with them, he provided notice of the meeting to his parole officers, and that it was scheduled on his calendar with the parole office. *Id.* at 9.

However, Plaintiff offers no evidence that his conduct or this interaction was approved by his parole supervisors. Plaintiff makes a wholly conclusory allegation that, "[b]ased on Plaintiff's interactions between Defendants Dan-Aliu and Evans… Plaintiff believes and asserts as fact that Evans directed Dan-Aliu to file revocation proceedings beyond the initial directive, Evans continued to be personally involved in planning, writing, and presenting the revocation paperwork." ECF No. 7 at 10. Plaintiff alleges, *inter alia*, that the charges that the parole board found against him are baseless and without evidentiary support, and that Hull and Dan-Aliu created the appearance of a parole violation where none existed. *Id.* at 11 and 14. Setting aside that Plaintiff's allegations are conclusory

and unsupported, Plaintiff has failed to prove the existence of a conspiracy to deprive him of First, Sixth, or Fourteenth Amendment Rights. Plaintiff has failed to offer any evidence of an "illegal act" let alone an agreement to deprive Plaintiff of his constitutional rights between Defendants. Rather Plaintiff's narrative demonstrates that Dan-Aliu and Evans' conduct was within the bounds of their job duties as parole officers. Especially when Plaintiff admits to the capturing and possessing the photos which partially formed the basis for his revocation. *Id.* at 9.

Plaintiff also alleges that Dan-Aliu directed Hull to discharge Plaintiff from sex-offender treatment, in the form of Hull's therapy services, and that Dan-Aliu is the sole cause for his for failure to enroll and participate in sex-offender treatment. *Id.* at 11. Again, Plaintiff is making conclusory allegations regarding Dan-Aliu and Hull's conduct, even though it is Plaintiff's burden to prove that this amounts to conspiracy. None of the elements to succeed on a valid conspiracy claim are met here.

**ii. Plaintiff has failed to prove constitutional deprivation.**

Plaintiff has failed to prove any constitutional deprivation, another pre-requisite to a valid conspiracy claim. As referenced above, Plaintiff engaged in conduct which seems clearly violative of his parole. At the very least, Plaintiff violated his parole when he decided to photograph children at the work lunch he references in his Amended Complaint. *Id.* at 9. Plaintiff's conduct, in sum, clearly amounts to a violation of his parole. As to the actual constitutional deprivation, for the reasons argued above, Plaintiff has failed to plead a valid First, Sixth or Fourteenth Amendment claim against Defendants and thus his conspiracy claims must be dismissed.

**iii. Dan-Aliu and Evans are entitled to Qualified Immunity.**

Before a court can address a § 1983 conspiracy claim, it must first determine whether qualified immunity applies to each underlying state action. *Mowbray v. Cameron Cnty., Tex.*, 274 F.3d 269, 279 (5th Cir. 2001). Qualified immunity is essentially an affirmative defense to conspiracy claims. As

argued below, Dan-Aliu and Evans are entitled to qualified immunity, and therefore Plaintiff's conspiracy claim fails for failure to state a claim upon which relief may be granted.

**H. Plaintiff has failed to state a valid joint action claim.**

To satisfy the joint action test which includes private actors, the Plaintiff must plead facts showing, an agreement to engage in a conspiracy to deprive the Plaintiff of a constitutional right between the state actor and the private actor, and that the private actor was a willing participant in joint activity with the state or its agents. *Hernandez v. Causey*, 124 F.4th 325, 337 (5th Cir. 2024). Without an agreement between private and state actors, any possible joint action involving only private parties is not actionable under § 1983. *Cinel v. Connick*, 15 F.3d 1338, 1344 (5th Cir. 1994).

In his Amended Complaint, Plaintiff alleges that in addition to a conspiracy referenced above, Hull, Evans, and Dan-Aliu engaged in Joint Action to deprive him of his constitutional rights. ECF No. 7 at 14. It is unclear if there was ever a joint action between private parties but regardless, as mentioned previously, Plaintiff has failed to establish that an agreement existed between Hull, Evans, and Dan-Aliu that deprived him of a constitutional right. Plaintiff received punitive sanctions as result of his parole breach, and is now free to exercise all of his rights under the constitution, besides the rights that are permanently limited by Plaintiff's status as a sex offender, such as his former right to photograph minors, in a non-obscene manner, under the First Amendment.

**I. Plaintiff's § 1983 claims should be dismissed because he fails to overcome Defendants' qualified immunity.**

"The doctrine of qualified immunity serves to shield a government official from civil liability for damages based upon the performance of discretionary functions if the official's acts were objectively reasonable in light of then clearly established law." *Thompson v. Upshur Cnty.*, TX, 245 F.3d 447, 456 (5th Cir. 2001) (citing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)). "'[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified

immunity defense with equal specificity.'" *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020) (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)). "A court's decision on qualified immunity involves two questions: (1) whether the defendant violated the plaintiff's constitutional or statutory rights; and (2) whether those rights were clearly established at the time of the violation 'such that the officer was on notice of the unlawfulness of his or her conduct.'" *Roque v. Harvel*, 993 F.3d 325, 331 (5th Cir. 2021) (quoting *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019). Before a court can address a § 1983 conspiracy claim, it must first determine whether qualified immunity applies to each underlying state action. *Mowbray v. Cameron Cnty., Tex.*, 274 F.3d 269, 279 (5th Cir. 2001).

Here, Plaintiff cannot overcome the first qualified immunity threshold because he fails to allege a viable constitutional claim. Plaintiff states in his Amended Complaint that he is subject to mandatory sex offender treatment, as well as special conditions N and X for his parole restrictions. ECF No. 7 at 3-4. Plaintiff alleges, *inter alia*, that Dan-Aliu and Evans misapplied the terms of Plaintiff's parole, and created a violation where none existed, violating Plaintiff's constitutional rights. *Id.* at 14. However, Plaintiff admitted and pleads to the violations throughout his Amended Complaint. *Id.* at 8-9.

Similarly, Plaintiff has failed to offer any factual basis to support his claims that Defendants conspired to deprive Plaintiff of his constitutional rights. Plaintiff is essentially alleging that his conduct is not violative of his parole, and that Dan-Aliu and Evans conduct, initiating revocation proceedings amounts to a constitutional deprivation.

Yet, by his own admission, Plaintiff breached his parole and his conclusory statements alleging constitutional violations are not enough to meet his burden of showing an infringement on his First Amendment and Fourteenth Amendment rights. Therefore, Plaintiff cannot surpass the first prong in the qualified immunity analysis.

Even so, Defendant Dan-Aliu and Evans' response to Plaintiff's alleged parole violation does

not amount to a violation of clearly established law. Assuming arguendo that Plaintiffs stated a viable constitutional claim, Defendants Dan-Aliu and Evans would still be entitled to qualified immunity because they acted reasonably in light of clearly established law.

Regarding the second prong of the analysis, "[i]n order to conclude that the right which the official allegedly violated is 'clearly established,' the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 635 (1987). Dan-Aliu and Evans were provided with information that Plaintiff had violated his parole and acted accordingly by investigating Plaintiff for the alleged violation. ECF No. 7 at 8-9.

Plaintiff has failed to meet his burden that as a parolee for child sex crimes, he is entitled to possess photos of children, take photos of children, and dine with children without a chaperone or supervisory approval, such that Dan-Aliu and Evans were on notice of the unlawfulness in their decision to begin revocation proceedings against Plaintiff. Plaintiff cannot provide this Court with the authority that Dan-Aliu and Evans limited involvement in this matter was a violation of a clearly established law. Therefore, Dan-Aliu and Evan's qualified immunity remains intact.

**J. Plaintiff cannot recover mental anguish or emotional damages, absent a physical injury under the PLRA.**

"Prisoners bringing federal lawsuits…ordinarily may not seek damages for mental or emotional injury unconnected with physical injury." *Minneci v. Pollard*, 565 U.S. 118, 129 (2012). Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act…" 42 U.S.C.A. § 1997e(e). It is the nature of the relief sought, and not the underlying violation, that controls the application of the physical injury requirement contained in Section 1997e(e). *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005). "Section 1997e(e) applies to all federal civil actions in which

a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries nonrecoverable, absent physical injury." *Id.* "Any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program". 42 U.S.C.A. § 1997e(h). No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18). 42 U.S.C.A. § 1997e(e).

Plaintiff requests compensatory damages for mental anguish and emotional distress caused by Defendants' conduct, due to the stress and humiliation Plaintiff allegedly suffered while confined because of his parole violation. ECF No. 7 at 17. Although Plaintiff was not incarcerated in a prison, he is still subject to the PLRA, because Plaintiff is requesting mental anguish damages for his confinement at a TDCJ ISF. *See generally* 42 U.S.C.A. § 1997e; ECF No. 7 at 17. Plaintiff has failed to establish the requisite physical injury or sexual act necessary to recover compensatory damages for mental anguish under the PLRA. Therefore, Plaintiff cannot recover for mental anguish or emotional damages.

## V. CONCLUSION

Defendants respectfully request that the Court to grant this Motion and Dismiss Plaintiff's claims against them, with prejudice, for failure to state claims upon which relief may be granted.

Respectfully Submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**

First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for Civil Litigation

**BRIANA WEBB**
Division Chief
Law Enforcement Defense Division

*/s/ J. Fisk Beckham*
**J. FISK BECKHAM**
Assistant Attorney General
Texas State Bar No. 24150112

Law Enforcement Defense Division
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
fisk.beckham@oag.texas.gov
(512) 463-2080 (Phone No.)
(512) 370-9814 (Fax No.)

**Counsel for Defendants**

**CERTIFICATE OF SERVICE**

I, **J. Fisk Beckham**, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing **Motion to Dismiss** has been served by placing same in the United States Mail, postage prepaid on or within one business day of July 23, 2026, addressed to:

Matthew James Leachman
2505 Reid St. Apt. A
Houston, TX 77026
Leachman.defense@gmail.com
*Plaintiff Pro Se*

*/s/ J. Fisk Beckham*
**J. Fisk Beckham**