**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

United States Courts
Southern District of Texas
FILED

AUG 24 2026

Nathan Ochsner, Clerk of Court

**MATTHEW JAMES LEACHMAN,** §
Plaintiff §
§
VS. §
§
**TOSIN DAN-ALIU;** §
**QUANITA EVANS;** § Civil Action No. **4:26-cv-04679**
**MONICA RUIZ DE VELASCO, Director,** §
**TDCJ—Parole Division;** §
**MARSHA MOBERLEY, Chair, Texas** §
**Board of Pardons and Paroles; and** §
**JANA HULL a/k/a JANA GASTON-HULL** §
**d/b/a CENTER FOR P.E.A.C.E.,** §
Defendants §

**PLAINTIFF'S RESPONSE TO STATE DEFENDANTS' MOTION TO DISMISS**

Plaintiff Matthew James Leachman files this response to the collective motion to dismiss filed by Defendants Tosin Dan-Aliu ("Dan-Aliu"), Quanita Evans ("Evans"), Monica Ruiz de Velasco ("Velasco"), and Marsha Moberley ("Moberley"), collectively referred to as the "State Defendants." [1] The State Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6).

**I.**

**Introduction**

1. Procedurally, Rule 12(b)(6) offers Defendants who are sued under plainly meritless circumstances an early dismissal, without the necessity of responding to discovery. The State Defendants seek this benefit, citing to Rule 12(b)(6) in their motion to dismiss (the "Motion"), and asking the Court to dismiss on those terms; even a cursory reading of the Motion, however,

1 Defendant Jana Hull ("Hull") is not a state employee and is not represented by the Attorney General's Office. Hull filed an appearance and answer in state court, post-removal, but has not appeared or answered in this Court to date.

reveals that what Defendants really want—what Defendants *need*, if the case is to be dismissed at this stage—is for the Court to make a merits decision in the total absence of evidence. In plain terms, Defendants are seeking summary judgment wearing a Rule 12(b) cloak, and the Motion should be denied.

2. Rule 12(b)(6) operates under a settled standard: reviewing courts accept all well-pled facts as true and make all reasonable inferences in favor of the plaintiff. *Allen v. Hays*, 65 F. 4th 736, 743. A complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964 (2007). And there is no heightened standard for Rule 12(b)(6) responses to the qualified immunity defense; the same standard of accepting all well-pled facts as true, and construing all inferences in the plaintiff's favor, applies. *Allen*, 65 F. 4th, at 743. A claim may proceed "even if it appears 'that a recovery is very remote and unlikely.'" *Twombly*, 127 S. Ct. at 1965 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## II.

## <u>Rule 12 Tests Pleadings, Not Plaintiff's Evidence</u>

3. Here, the Motion repeatedly treats disputed factual propositions as established facts, attempts to inject new facts into the record on the unsupported assertions embedded in arguments, demands that Plaintiff "prove" allegations and "offer evidence" at the pleading stage, and selectively cites TDCJ policy, out of context, in an effort to turn contested interpretations of Plaintiff's supervision conditions into supposed "admissions."

4. That is not a Rule 12 inquiry.

5. Invoking qualified immunity does not convert a motion to dismiss into summary judgment, and it does not require Plaintiff to attach his evidentiary file. The inquiry into how

qualified immunity affects the claims may require more specificity on how each individual defendant raising the defense was liable, but for those more specific claims, the rule applied in *Allen* remains the same: all well-pled facts presented by a plaintiff are taken as true, and all inferences are made in that plaintiff's favor.

6. Here, Defendants' own account of Plaintiff's allegations implicitly admits that Plaintiff provided a sequence of *concrete allegations*: Plaintiff used non-obscene stock photographs in actual litigation and preparation for litigation; the litigation-related material was disclosed by Hull; in immediate response, Dan-Aliu and Evans examined Plaintiff's phone, specifically looking for that material; they treated the litigation material and photographs from a restaurant gathering as parole violations; Dan-Aliu and Evans personally knew the written terms of Plaintiff's supervision; Dan-Aliu and Evans knew that there was no violation of those written terms on Plaintiff's part; Dan-Aliu and Evans charged Plaintiff with a parole violation despite their knowledge that no violation occurred; Dan-Aliu personally directed Plaintiff to be discharged from treatment and then charged him with failing to participate in treatment; revocation proceedings followed; and the resulting sanction caused approximately four months of confinement.

7. Furthermore, Defendants also acknowledge that Plaintiff remains on mandatory supervision and that his official-capacity claims allege continuing policies permitting parole conditions to be expanded through unwritten enforcement practices.

8. The Motion nevertheless asserts, *inter alia*, that Plaintiff "failed to prove" an agreement, "failed to offer any evidence" of an illegal act, bears the burden of "proving" that his conduct was not a parole violation, and should have attached his revocation-appeal records. **Those are merits formulations, not pleading standards**.

9. For example, with respect to Defendants' flat assertion that Plaintiff could have,[2] and should have, attached the records from his revocation, Defendants are both attempting to insert facts and inferences into the record *and* suggesting that Plaintiff needs to muster evidence to "prove" the specific allegations he pled about those records. Neither is appropriate at this stage. The only question *now* is how those facts, taken as true, affect the overall sufficiency of the pleading and, where applicable, the qualified immunity defense.

10. In another example, Defendants submit that Plaintiff has "admitted" taking photographs of children while on supervision and represent to the Court that Plaintiff is "not permitted to engage in [photography] unless he seeks approval in writing from his parole supervisors," Motion at 13, offering this as proof that Plaintiff did, in fact, violate the terms of supervision. However:

a. Plaintiff has **never** admitted taking photographs of children while on supervision.[3]

b. The "admission" on which Defendants appear to rely involves the photos that showed coworkers' children sitting with their parents at an employee meeting where Plaintiff was also in attendance. Plaintiff's acknowledgment of the *picture,* however, is in no way an admission that Plaintiff *made* the picture. Perhaps Defendants want the Court to infer that Plaintiff set his phone up at a distance and used the timer to place himself in the picture, but this is precisely the sort of inference that Rule 12 review does not allow. There are a number of commonplace ways a photo taken by another could have ended up on Plaintiff's phone, including the one that actually occurred here: the business manager emailed all employees photos taken during the event.

c. For the proposition that Plaintiff's specific conditions of supervision prohibit Plaintiff from "owning or operating a camera unless approved in writing," Defendants ask the Court to refer to a policy document available online, but they materially misstate the import of that document. **Defendants are the very individuals supervising Plaintiff**

---

2 In fact, Defendants are well aware that Plaintiff does not have a copy of the appeal documents he sent in from the county jail; Plaintiff told them so himself, in a follow-up communication to the Board. The conditions in which he was confined, based on Defendants' own actions, prevented Plaintiff from making the copies. Even assuming a good-faith scenario where Defendants forgot that communication from Plaintiff or did not consult the record when drafting the Motion, they are asking for an inference (*i.e.*, Plaintiff will have copies) that favors their position—a request they make throughout their Motion.

3 Lest there be any doubt, let the record reflect that Plaintiff expressly asserts that he has taken **no photographs or video recordings of children during the period of his supervision**, period.

> **and have full knowledge that the condition they ask the Court to notice is *not* one of the conditions imposed on Plaintiff.** Component E-2 of Condition X is imposed only "where the offender used such equipment or any other electronic device to commit the offense"—a circumstance inapplicable to Plaintiff.[4] Defendants, more than anyone else, understand when and to whom the various components of Special Condition X apply, and Plaintiff takes specific exception to their misrepresentation to the Court of the actual terms of Plaintiff's conditions.

11. This pattern is repeated throughout the Motion. Defendants repeatedly demand proof of the facts Plaintiff has clearly alleged, and they repeatedly ask the Court to make inferences from those facts *against* Plaintiff rather than in Plaintiff's favor. In each and every case where Defendants assert that Plaintiff has "admitted" violating the terms of his supervision, or that Plaintiff's assertions present a "*prima facie*" (Motion at p. 14) or "clear" (Motion at p. 17) violation of those terms, anything beyond superficial examination shows that Defendants either mischaracterize Plaintiff's assertions or ask for a conclusion based on inferences adverse to Plaintiff.

12. Consideration of the text of a policy is different from accepting Defendants' disputed conclusions about it: that it governed Plaintiff in precisely the manner Defendants assert; that it was incorporated into the conditions furnished to him; that no permission existed; that the alleged restaurant conduct constituted "unsupervised contact"; or that the particular photographs were "clearly violative." Defendants attempt not merely to establish what a public document *says* but to establish contested facts and inferences against the pleading. Rule 12 does not permit that.

13. If Defendants think that Plaintiff will be unable to prove the specific facts he has alleged with competent evidence, or that Defendants will ultimately prevail in convincing a factfinder to make inferences in their favor, their theories can be tested at the summary judgment or the trial stage of proceedings. But a Rule 12(b)(6) review does not require such proof, and it

---

4 https://www.tdcj.texas.gov/bpp/documents/pol_dir/POL_145.263.pdf, Section E.2. (Last accessed Aug. 17, 2026).

does not permit such inferences.

### III.

### Prospective Relief: Ongoing Supervision Makes the Challenged Practice a Present Injury

14. While Defendants correctly identify the governing distinction that past exposure to allegedly unlawful conduct does not *by itself* confer standing for an injunction or declaration concerning future conduct, the standing inquiry does not end merely because Plaintiff's ISF confinement ended in September 2024.

15. Fifth Circuit precedent requires an actual present injury or a "substantial likelihood of future injury." *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003). Defendants' Motion itself acknowledges that Plaintiff remains subject to parole conditions today and recognizes that Plaintiff challenges ongoing policies and practices that allow, even encourage, officials to impose sanctions through unwritten expansions of written conditions. The relevant prospective injury is not a generalized fear that the 2024 event might somehow recur; it is the **continued exposure to an ongoing enforcement regime while Plaintiff remains a person directly regulated by that regime**.

16. The Fifth Circuit's decisions in the context of speech-related, pre-enforcement decisions make the future injury more concrete. For example, in the context of pre-suit injunction, *Speech First, Inc. v. Fenves*, 979 F.3d 319, 329-338 (5th Cir. 2020), recognized injury where plaintiffs intended to engage in conduct with a constitutional interest, the conduct was arguably covered by the challenged regime, and there was a substantial threat of enforcement; **self-censorship can itself constitute injury when prompted by a credible enforcement threat**.

17. Plaintiff does not assert that he demonstrates injury simply because he remains on

parole. Rather, Plaintiff remains on parole **and** presently must decide—on a daily basis—whether to engage in lawful litigation, to possess or use non-prohibited litigation materials to which individual parole officials might object, and to engage in other constitutionally protected conduct under a regime that deliberately punished such activity on a prior occasion, in part by expanding written restrictions after the fact.

18. For example, Plaintiff's proceedings to recover his property in state court still await judicial action. The state judge has not ruled on Plaintiff's request. Plaintiff has, thus far, not pressed for a ruling precisely because he reasonably expects the challenged enforcement practice to be applied again. Defendants' prior enforcement against this same Plaintiff is relevant to the credibility of the alleged future threat. It is not necessary for a Plaintiff to be injured repeatedly before seeking relief.

## IV.

## No Immunities Govern the Claims Against Official-Capacity Defendants

19. The Motion argues that Moberley and Velasco have immunity from damages. This section of the Motion tilts at windmills, however, for Plaintiff made it abundantly and expressly clear in the text of his First Amended Complaint that he sought damages only against personal-capacity Defendants and that Moberley and Velasco were named only in their official capacities.

20. Under *Ex parte Young*, 209 U.S. 123 (1908), suits for injunctive or declaratory relief are allowed against state officials acting in violation of federal law if the officials are sufficiently connected to their enforcement of an unconstitutional law or policy. *E.g.*, *Texas Democratic Party v. Abbott*, 978 F. 3d 168, 179 (5th Cir. 2020). "A scintilla of enforcement by the relevant state official with respect to the challenged law will do." *Id.* (internal quotations and citation omitted). As described in Plaintiff's First Amended Complaint, Velasco and Moberley have actual enforcement authority over the policies and practices at issue in this suit, which makes

them proper defendants under *Young*.

21. Additionally, even if Plaintiff's First Amended Complaint was defective in naming the proper official-capacity defendants under *Young*, the remedy would not be the dismissal with prejudice sought by Defendants, but rather an opportunity to amend or, at most, dismissal without prejudice with leave to name or plead the properly connected official. *See Warnock v. Pecos County, Texas*, 88 F. 3d 341, 343 (5th Cir. 1996).

22. Defendant Moberley also invokes absolute immunity for the quasi-judicial function of parole revocations. But Defendants' own Motion ends its discussion on this point by saying that Moberley is entitled to absolute immunity *in suits for damages*—a statement that Plaintiff agrees is absolutely accurate, while remaining irrelevant to Plaintiff's actual claims against Moberley. Again, Plaintiff took pains in his First Amended Complaint to establish that he was *not* seeking damages against Moberley or Velasco. Her immunity from such damages is inapposite to these proceedings; Plaintiff is not seeking to impose personal liability on Moberley for reaching a particular result in Plaintiff's 2024 revocation proceedings.

**V.**

**<u>*Heck* Is a Claim-Specific Gate, Not a Case-Wide Eraser</u>**

23. The Motion cites *Heck v. Humphrey*, 512 U.S. 477 (1994), in support of its argument for dismissal of the entire case with prejudice. But Defendants' *Heck* argument is premature and, on the pleaded facts of *this* case, incorrect.

24. *Heck* protects the boundary between habeas corpus and § 1983. Its concern lies in ensuring that allegations that belong in habeas proceedings, and subject to the restrictions on such relief, do not achieve the end goal (invalidation of a conviction or sentence) via findings in a § 1983 proceeding; therefore, "[t]here is no need to preserve the habeas rule and no impediment under *Heck*" to cases that threaten no consequence to a conviction or sentence.

*Muhammad v. Close*, 540 US 749, 751-52 (2004). The Fifth Circuit, post-*Muhammad*, has been consistent and firm in emphasizing that a *Heck* analysis must be "analytical and fact-intensive." *Gray v. White*, 18 F.4th 463, 468 (5th Cir. 2021) (citing *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008)).

25. Specifically, the fact-intensive analysis requires a court to determine whether a judgment for Plaintiff would **necessarily** imply the invalidity of an outstanding conviction, sentence, or qualifying parole determination. The analysis turns on the specific claim, the specific adjudication, and *whether the civil claim is temporally and conceptually distinct from the prior decision*. Here,

a. Defendants identify no parole revocation, no altered sentence, no changed parole term, and no shortened or lengthened period of supervision that Plaintiff's claims would invalidate; and,

b. Plaintiff does not seek release, shortening of his parole term, restoration of good-time credits, or *vacatur* of his underlying conviction or sentence. He seeks damages for injuries caused by Defendants' misrepresentations and their misapplication of parole conditions.

A judgment on Plaintiff's claims could coexist with Plaintiff's underlying conviction, sentence, parole status, and parole end date.

26. Defendants' Motion illustrates why *Heck* cannot be resolved on this Rule 12 record. Defendants argue on the one hand that Plaintiff needed more proof of the specific parole terms and exact grounds of the alleged parole violation at the pleading stage, and yet on the other hand, they ask the Court to conclude that Plaintiff's claims necessarily invalidate an unidentified parole determination. Rule 12 does not permit that inference against Plaintiff.

27. To undertake a *Heck* analysis in this case, the Court would need to establish facts concerning what was charged, what was adjudicated, what sanction was imposed, whether any of Plaintiff's claims necessarily contradict facts actually and necessarily decided in the parole

proceeding, and—crucially, and ultimately—whether the sanction altered the fact or duration of Defendant's judgment, sentence, or parole. Those are record questions, not pleading-stage assumptions.

28. Additionally, the request that the Court permanently dismiss the case with prejudice runs afoul of two separate rules of decision. The first is that even when specific claims are barred by *Heck*, the appropriate remedy is dismissal with an opportunity to bring the claim again if the *Heck* conditions are met. *DeLeon v. City of Corpus Christi*, 488 F.3d 649, 657 (5th Cir. 2007). The second is that a forward-looking, official-capacity claim can proceed when success would not necessarily produce immediate or speedier release. *Wilkinson v. Dotson*, 544 US 74, 82 (2005). Plaintiff need not ask this Court to vacate, annul, or declare invalid the 2024 ISF decision in order to obtain an injunction forbidding future punishment based on unconstitutional unwritten expansions of supervision conditions.

## VI.

## **This Is a Retaliation Claim, Not Merely a Lost-Lawsuit Claim**

29. Defendants attack the First Amended Claim as though Plaintiff's First Amendment theory were solely that their conduct prevented Plaintiff from successfully litigating another case. They cite to cases involving backward-looking denial-of-access claims, in which a plaintiff must identify an actual injury to an arguable, nonfrivolous legal claim. See *Motion* at 12 (*citing, inter alia*, *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999), *and Brewer v. Guidry*, No. CV H-21-3717, 2021 WL 5585736, at *2 (S.D. Tex. Nov. 29, 2021)).

30. But Plaintiff's First Amendment claim is one of retaliation for having resorted to the courts in the first place. The elements of **that** sort of First Amendment claim are a specific protected right, retaliatory intent, a sufficiently serious adverse act, and causation. *E.g.*, *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). The retaliatory conduct must be more than *de*

*minimis*; it must be "capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Id.* At 686.

31. Here, Plaintiff has alleged facts that, taken as true and with all inferences made in his favor, he pursued a course of litigation not only protected by the First Amendment, but also fully compliant with written conditions of supervision; that parole officials responded by both falsifying a revocation report (*i.e.*, charging conduct they knew had not occurred) and ordering Plaintiff's therapist to discharge him from therapy in order to create another violation; that they imposed sanctions far beyond de minimis; and that without retaliatory motive, the sanctions would not have occurred. This is sufficient to survive Rule 12 analysis, especially since Defendants failed to address the elements of Plaintiff's actual claim.

32. In fact, Defendants appear to believe that Plaintiff "has not pled that Defendants have interfered or retaliated against Plaintiff for any of his lawful litigation activities." Motion at 7. Plaintiff disagrees, and believes that this is merely another instance of the State Defendants repeatedly attacking Plaintiff's *characterization* of his claims (or, in some cases, *Defendants'* characterization of Plaintiff's claims) rather than the *facts pleaded in support of them*. But Rule 8 requires factual pleading, not perfect legal taxonomy or precision. *See Johnson v. City of Shelby*, 574 U.S. 10, 11–12 (2014) (per curiam). This distinction carries particular force in a pro se suit. The Fifth Circuit emphasizes that such pleadings must be liberally construed and has specifically held that a pro se civil-rights plaintiff need not identify the correct statutory provision or perfectly articulate the legal theory supported by the facts Plaintiff asserts. *Rodgers v. Lancaster Police & Fire Dep't*, 819 F.3d 205, 207 & n.2 (5th Cir. 2016).

## VII.

## Fair Notice Means the Written Condition Matters

33. Defendants construe the Fourteenth Amendment count exclusively through the

procedural checklist in *Morrissey v. Brewer*, 408 U.S. 471, 488-89 (1972): notice of charges, disclosure of evidence, an opportunity to be heard, confrontation, a neutral decisionmaker, and a written statement of reasons. Plaintiff agrees that these are central parole-revocation protections. But *Morrissey* also **begins from the premise** that a parolee retains conditional liberty while substantially complying with parole and that the **threshold revocation question is factual**—whether the parolee actually violated one or more conditions. *Farrish v. Mississippi State Parole Bd.*, 836 F.2d 969, 971 n.2 (5th Cir.1988), which Defendants cite in another context, applied that very understanding.

34. This is not a case of in which Plaintiff complains, "I received a hearing and disliked the result." Rather, Plaintiff asserts that officials converted conduct **outside** the written prohibitions into violations by using "ad hoc unwritten expansions" and thereby deprived Plaintiff of fair notice as to *what conduct could produce punishment*. That theory implicates a distinct and very well established due-process principle: a supervision condition may not be so indeterminate that it fails to give ordinary people fair notice of punishable conduct or invites arbitrary enforcement. *United States v. Abbate*, 970 F.3d 601, 603–05 (5th Cir. 2020), expressly holds that this due-process principle applies to supervised-release conditions. *See also U.S. v. Paul*, 274 F.3d 155 (5th Cir., 2001) ("Restrictions on an offender's ability to interact with particular groups of people, to hold certain types of employment, and to frequent certain places must provide fair notice of the prohibited conduct.")

35. Here, Plaintiff does not necessarily contend that every written condition is facially unintelligible. Rather, he alleges that Defendants punished him under **additional prohibitions** not conveyed by the written conditions as they were given and explained to him, **and** construed conditions in ways contradictory to both common sense and judicial construction (*e.g.*, asserting

that incidental presence of minors at a work function, when Plaintiff had no contact or interaction with the minors and was never alone with them, constituted "unsupervised contact").

36. Even now, in their Motion, Defendants **acknowledge** that Plaintiff asserts that he possessed only non-obscene stock photographs and non-obscene discovery materials from a criminal case. And Plaintiff also pled the precise terms of the supervision condition regarding possession and download of photographs: Plaintiff is forbidden from accessing or possessing such material *only when it is obscene, as defined in the Texas Penal Code.* There is no problem with the specificity of that condition: any person of reasonable intelligence can understand what is prohibited. Yet the Motion baldly characterizes access to *any* photographs of children as per se restricted and characterizes Plaintiff's assertions of downloading non-obscene material as an "admission" of a violation, despite the plain words of the actual prohibition.

37. In sum, whether the revocation procedure itself comported with *Morrissey* is not the issue. Before criminal statutes and parole rules can be applied to sanction a person, fundamental due process requires fair notice of what conduct is forbidden. As the Supreme Court noted in a recent due-process case, "words are how the law constrains power. . . . If men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them." *Niz-Chavez v. Garland*, 593 US 155, 141 S.Ct. 1474, 1486 (2021). Under this standard, Plaintiff's pleadings more than satisfy the Rule 12 standard.

## VIII.

## The Board's Final Vote Does Not Erase Upstream Causation

38. Defendants also argue that Dan-Aliu and Evans cannot have caused a deprivation of liberty because the Board ultimately had statutory authority to impose the sanction. That

proposition is too categorical by far and without support.

39. Section 1983 requires causation, but the existence of an intervening decisionmaker does not automatically erase causation where the complaint alleges that upstream officials supplied materially false information or otherwise tainted the process on which the intermediary acted. The Fifth Circuit has applied that principle in its independent-intermediary cases, including *Terwilliger v. Reyna*, 4 F.4th 270 (5th Cir. 2021). The principle arises most frequently in Fourth Amendment contexts, as was the case in *Terwilliger*, but the rule is applicable here: an intermediary does not break the chain when the intermediary's deliberations are tainted by materially false or omitted information.

40. Here, the Plaintiff has asserted concrete, upstream acts to Dan-Aliu and Evans: their investigation of the litigation material; their characterization of particular conduct as violations, even knowing that the written terms of Plaintiff's supervision did not forbid that conduct; planning, preparation, and presentation of revocation paperwork; and, as to Dan-Aliu, directing Hull to discharge Plaintiff and then relying on nonparticipation in treatment as a charge. Plaintiff's First Amendment complaint asserts that **there were no valid independent violations**, and Defendants cannot establish that there were merely by observing that Texas law gives the Board final authority. The issue in this action is whether Defendants' acts materially caused or tainted the process that produced the sanction.

## IX.

## Why the Sixth Amendment Matters

41. The Defendants appear to misapprehend the nature of Plaintiff's Sixth Amendment claim, arguing, essentially, that Plaintiff's damage claim is based on civil and parole proceedings where the Sixth Amendment does not apply. Plaintiff acknowledges that claims related to his

litigation conduct fit within the First and Fourteenth Amendment analysis whether or not the Sixth Amendment applies.

42. The independent Sixth Amendment, however, is not superfluous. As Plaintiff asserted clearly in his First Amended Complaint, the stock pictures Plaintiff downloaded from the internet —which were no longer actually present on his phone, but were retrievable based on Google's long memory—were downloaded for use in presentation of his defense against active criminal proceedings charging Plaintiff with Aggravated Sexual Assault, in which Plaintiff proceeded pro se.

43. Unlike the First and Fourteenth Amendments, the Sixth Amendment guarantees core rights to criminal defendants that do not apply in other cases. Even if the Sixth Amendment does not apply directly to Plaintiff's civil claim now—even if it is better to simply fold the claim in with the other Fourteenth Amendment claims—the protections of the Sixth Amendment provide vital context for the Court to consider. The conduct for which Dan-Aliu and Evans retaliated was the presentation of Plaintiff's core defensive theory when he was, in fact, a criminal defendant, and thus entitled to present that theory in his defense.

## X.

## The Order to Hull Was More Than Parallel Conduct

44. Before addressing the actual elements of the conspiracy, Plaintiff pauses to address this remarkable sentence: "Plaintiff also alleges that Dan-Aliu directed Hull to discharge Plaintiff from sex-offender treatment, in the form of Hull's therapy services, and that Dan-Aliu is the sole cause for his for failure to enroll and participate in sex-offender treatment. Again, Plaintiff is making conclusory allegations regarding Dan-Aliu's and Hull's conduct." Motion at 17 (citation omitted). Plaintiff points out:

a. As Plaintiff clearly pled in his First Amended Complaint, Plaintiff did in fact enroll in sex-offender treatment and participate in treatment, including at the last scheduled meeting before his arrest. The clear inference from that fact is that the "discharge" cited in revocation proceedings was the sole "failure" to comply with the rules.

b. "Dan-Aliu directed Hull to discharge Plaintiff from sex-offender treatment" is a statement identifying a specific action taken by a specific person at a specific time, and any conclusions that attach to Plaintiff's characterization of the conduct as "directed" are not *unsupported* conclusions; they are inferences which, at the Rule 12 stage, must be taken in Plaintiff's favor based on the facts.[5]

45. Defendants point out that to establish conspiracy, there must be proof of facts supporting an agreement to violate a constitutional right plus an actual deprivation in furtherance of the agreement; a private actor may be treated as acting under color of law where the private party is a willing participant in joint activity with state actors. Defendants cite the governing Fifth Circuit formulation, including *Cinel v. Connick*, 15 F.3d 1338 (5th Cir. 1994), and *Hernandez v. Causey*, 124 F.4th 325 (5th Cir. 2024). Motion at 18. From there, however, the Motion repeatedly says Plaintiff "failed to prove" the agreement and "failed to offer any evidence" of an illegal act.

46. In this argument, once again, Defendants mischaracterize the Rule 12 analysis. At the pleading stage, Plaintiff must assert facts permitting a plausible inference of concerted action, **not** prove the agreement with documents or testimony. Plaintiff asserted rather more than mere simultaneous conduct in his First Amended Complaint. Hull or her agent obtained information in therapy concerning Plaintiff's litigation; Hull communicated with parole; Dan-Aliu expressly ordered Hull to discharge Plaintiff from treatment; Hull did so; and Dan-Aliu then charged Plaintiff with failure to enroll or participate in the treatment from which she herself had caused his removal.

---

5 Plaintiff knows, from the actual testimony at the revocation hearing, the general nature of Dan-Aliu's conduct. Plaintiff does not know the mechanism by which Dan-Aliu communicated, the precise words she used, or other granular facts known, at present, only to Defendants. The absence of these presently unavailable details does not render pleaded facts conclusory. Rather, the known and well-pled facts, and the justifiable inferences therefrom, are sufficient to overcome a Rule 12 objection.

47. An improper communication by a private provider, anticipating action, followed by an instruction by a state actor to the private provider and compliance by the provider, followed by state use of the resulting condition as a punitive predicate, supports the inference of joint participation. At this stage, Plaintiff has satisfied his pleading burden.

48. As to Evans specifically, Plaintiff has asserted facts based on his personal observation of his interactions with Evans and Dan-Aliu, and belief flowing from those facts. Plaintiff acknowledges that he cannot prove, at the pleading stage, the full extent of Evans and Dan-Aliu's continued joint action. That information will only be available in discovery. What Plaintiff *has* shown is a specific factual basis from which he infers Evans's role, and at the Rule 12 stage, the Court must draw reasonable inferences from those pleaded facts in Plaintiff's favor.

## XI.

## Defendants Define the Clearly Established Right Too Narrowly in Their Qualified Immunity Analysis

49. Plaintiff bears the burden of alleging—not proving—facts which, taken as true and with all inferences flowing in his favor, are sufficient to show a constitutional violation and that the pertinent law was clearly established at the time. While the Fifth Circuit requires defendant-specific allegations and not generalized assertions that defendants collectively violated the Constitution, the qualified-immunity analysis **remains a pleading inquiry** at the Rule 12 stage.

50. Defendants frame the clearly established right as whether a sex-offender parolee has a clearly established constitutional right "to possess photos of children, take photos of children, and dine with children without a chaperone or supervisory approval." Motion at 20. But that framing assumes the exact merits propositions which are disputed, and describes the claim both too factually and too inaccurately.

51. Specifically, Plaintiff does not need a case establishing some abstract constitutional entitlement to possess every photograph of a child irrespective of valid supervision restrictions. Instead, the constitutional wrong asserted here is that **officials knowingly used disciplinary or revocation machinery to punish protected resort to the courts by characterizing conduct they knew was permitted—or by manufacturing a separate treatment violation—as grounds for punishment**. The right to be free from false disciplinary action taken in retaliation for access to the courts and from retaliation against a person for seeking access to courts are both well established, and were established long before Dan-Aliu and Evans embarked on their course of unconstitutional conduct.

52. If this were a case where Dan-Aliu and Evans simply received reliable information demonstrating an unambiguous parole violation and objectively enforced a clearly written condition, qualified immunity might apply. But that is not the case Plaintiff has pled. The First Amended Complaint asserts that the images were non-obscene litigation material, that the work event did not involve unsupervised contact *and* had been disclosed to parole authorities, that prior parole guidance had informed Plaintiff what he could possess for litigation, and that Dan-Aliu herself caused the treatment discharge later used as a violation. At this stage, the Court must test immunity against the pleaded version of events, not against Defendants' competing factual account.

53. Likewise, the necessity of fair notice of prohibited conduct—notice given *before* punitive proceedings—was not some novel outlier in constitutional theory. It is well established that officials cannot knowingly impose punishment under an **unwritten** prohibition where the **written rule and prior guidance did not prohibit the conduct**.

## XII.

## Section 1997e(e) Turns on Plaintiff's Status When Suit Was Filed

54. Defendants argue that this suit is governed by the PLRA. They acknowledge that Plaintiff was not confined in ISF at the time of the constitutional wrong, that Plaintiff's ISF confinement ended in September 2024, and that this action was filed in May 2026, when Plaintiff was on parole. Yet they argue that § 1997e(e) applies because the emotional injuries for which Plaintiff seeks damages were suffered during the earlier ISF confinement.

55. The Fifth Circuit, however, has been clear and precise. PLRA prisoner status is assessed at filing and applies the statutory definition by asking whether the person is incarcerated or detained in a facility and, if so, whether that detention is attributable to the relevant criminal or supervision status. *See, e.g., Janes v. Hernandez*, 215 F.3d 541, 543 (5th Cir. 2000) (recognizing that PLRA exhaustion only applies to individuals who are prisoners at the time they file suit). In *Jackson v. Johnson*, 475 F.3d 261, 265 (5th Cir. 2007), the Fifth Circuit distinguished a supervisee compelled to live in a halfway house where he was locked inside for much of the day from ordinary parolees released "to the general public," noting the textual conclusion that an ordinary parolee not detained in a facility does not fit the § 1997e(h) definition.

56. Even on Defendants' own recitation, the PLRA does not apply. The Court therefore should deny Defendants' § 1997e(e) request on the present pleading.

## XIII.

## Conclusion

57. For the reasons stated above, Plaintiff respectfully requests that the Court deny the State Defendants' Motion to Dismiss and grant Plaintiff any other relief to which he may show

himself entitled.

Respectfully submitted,

*/s/ Matthew James Leachman*

Matthew James Leachman
2505 Reid St Apt A
Houston, Texas 77026
832-960-3665
leachman.defense@gmail.com

**PLAINTIFF PRO SE**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served to and upon the following:

J. Fisk Beckham
Assistant Attorney General
Law Enforcement Defense
Office of the Attorney General of Texas
PO Box 12548, Capitol Station
Austin, TX 78711-2548
512- 500-1492
Fisk.beckham@oag.texas.gov

Derrell Wright
TBC 24037744
2402 Rosedale St
Houston, TX 77004-6018
713-552-0600
attorneydwright@gmail.com

via U.S. Mail, first-class postage prepaid, on this 17th day of August, 2026.

**Plaintiff**

F

US POSTAGE IMI 928760817223848 2000393289
$2.85
SSK
FCM

08/17/26 Mailed from 77002 028W2312043

**USPS FIRST-CLASS MAIL®**

4.60 oz
**RDC 99**

SHIP
TO:
**HOUSTON TX 77208**

(420) 77208

C.A. No. 4:26-cv-04679

**MATTHEW JAMES LEACHMAN**
2505 Reid St Apt A
Houston, TX 77026

**Nathan Ochsner, Clerk of Court**
United States District Court
Southern District of Texas - Houston Division
P.O. Box 61010
Houston, TX 77208

United States Courts
Southern District of Texas
FILED

AUG 24 2026

Nathan Ochsner, Clerk of Court

RE: Leachman v. Dan-Aliu, Civil Action No. 4:26-cv-04679