**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

United States Courts
Southern District of Texas
FILED

OCT 0 6 2026

Nathan Ochsner, Clerk of Court

| | | |
|---|---|---|
| **MATTHEW JAMES LEACHMAN,**<br>Plaintiff<br><br>VS.<br><br>**TOSIN DAN-ALIU;**<br>**QUANITA EVANS;**<br>**MONICA RUIZ DE VELASCO, Director, TDCJ—Parole Division;**<br>**MARSHA MOBERLEY, Chair, Texas Board of Pardons and Paroles; and**<br>**JANA HULL a/k/a JANA GASTON-HULL d/b/a CENTER FOR P.E.A.C.E.,**<br>Defendants | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. **4:26-cv-04679** |

**PLAINTIFF'S MOTION TO ALTER OR AMEND THE SEPTEMBER 8 2026 DISMISSAL UNDER RULE 59(e) AND MEMORANDUM IN SUPPORT**

Plaintiff requests vacatur of the dismissal with prejudice, correction of material factual and legal errors, and a specific order requiring identification of support for or withdrawal of the factual representations addressed below. A separate proposed order accompanies this motion.

**TABLE OF CONTENTS**


I. Nature and stage of the proceeding........5

II. Issues and governing standards........6

III. Summary of the argument........7

IV. Material factual errors in the dismissal........7

- A. The FAC does not allege a warrant or discovery of child pornography........7
- B. Three distinct groups of images were improperly collapsed........8
- C. The applicable camera condition was not established........8
- D. Therapy litigation and administrative review require accurate descriptions........9

V. The legal consequences must be assessed claim by claim........10

- A. *Heck* does not impose the categorical bar stated in the order........10
- B. *Olivier* requires separate consideration of prospective relief........11
- C. Supervision does not waive all constitutional rights or personal liability........12
- D. The ongoing enforcement allegations require a standing and *Young* analysis........13

VI. The remaining dismissal arguments depend on the correct allegations........14

VII. Hull and the Texas claims require separate disposition........17

VIII. Specific corrective relief concerning Mr. Beckham's factual representations........18

IX. Alternative amendment and precise relief requested........20

Certificate of conference........22

Certificate of service........23

## TABLE OF AUTHORITIES

### Cases

*Allen v. Hays*, 65 F.4th 736 (5th Cir. 2023)....6, 16
*Bauer v. Texas*, 341 F.3d 352 (5th Cir. 2003)....6, 14
*Carroll v. Fort James Corp.*, 470 F.3d 1171 (5th Cir. 2006)....17
*Davoodi v. Austin Independent School District*, 755 F.3d 307 (5th Cir. 2014)....17
*DeLeon v. City of Corpus Christi*, 488 F.3d 649 (5th Cir. 2007)....7, 20
*Foman v. Davis*, 371 U.S. 178 (1962)....7, 20
*Freeport-McMoRan Oil & Gas Co. v. FERC*, 962 F.2d 45 (D.C. Cir. 1992)....20
*Hafer v. Melo*, 502 U.S. 21 (1991)....13
*Heck v. Humphrey*, 512 U.S. 477 (1994)....6–7, 10–11, 15–16, 20
*Hernandez v. Livingston*, 495 F. App'x 414 (5th Cir. 2012) (per curiam)....13
*Jackson v. Johnson*, 475 F.3d 261 (5th Cir. 2007)....17
*Janes v. Hernandez*, 215 F.3d 541 (5th Cir. 2000)....16
*Lewis v. Lynn*, 236 F.3d 766 (5th Cir. 2001)....18
*Littles v. Board of Pardons & Paroles Division*, 68 F.3d 122 (5th Cir. 1995)....10
*Morrissey v. Brewer*, 408 U.S. 471 (1972)....13, 15
*Muhammad v. Close*, 540 U.S. 749 (2004)....10
*Olivier v. City of Brandon*, 607 U.S. 552, 146 S. Ct. 916 (2026)....6–7, 11–12, 16
*Ray v. Recovery Healthcare Corp.*, No. 22-10303 (5th Cir. Nov. 15, 2022) (unpublished)...10–11
*Smith v. Hood*, 900 F.3d 180 (5th Cir. 2018)....10
*Speech First, Inc. v. Fenves*, 979 F.3d 319 (5th Cir. 2020)....14
*Templet v. HydroChem Inc.*, 367 F.3d 473 (5th Cir. 2004)....6
*United States v. Abbate*, 970 F.3d 601 (5th Cir. 2020)....15
*Verizon Maryland Inc. v. Public Service Commission of Maryland*, 535 U.S. 635 (2002)....6, 14
*Wilkinson v. Dotson*, 544 U.S. 74 (2005)....12
*Woods v. Smith*, 60 F.3d 1161 (5th Cir. 1995)....14, 16

**TABLE OF AUTHORITIES continued**

**Constitution, statutes, and rules**

28 U.S.C. § 1367(c)(3) .... 18

42 U.S.C. § 1997e(e), (h) .... 16

Federal Rule of Civil Procedure 11(b)(3), (c) .... 18, 20

Federal Rule of Civil Procedure 12(b)(6), (d) .... 6, 8–9, 19

Federal Rule of Civil Procedure 15(a)(2) .... 20

Federal Rule of Civil Procedure 58(c)(2), (d) .... 5, 21

Federal Rule of Civil Procedure 59(e) .... 5–6

Southern District of Texas Local Rule 7.1(D) .... 22

Texas Government Code § 508.154(a)–(d) .... 12

United States Constitution, First Amendment .... 16

United States Constitution, Fourth Amendment .... 8

United States Constitution, Sixth Amendment .... 9, 16

United States Constitution, Eleventh Amendment .... 13

United States Constitution, Fourteenth Amendment .... 16

## I. Nature and stage of the proceeding

Plaintiff Matthew James Leachman moves under Federal Rule of Civil Procedure 59(e) to alter or amend the September 8, 2026, **Order on Motion to Dismiss** (Dkt. 16), vacate its dismissal with prejudice, and reopen this removed action. The order substitutes disputed, unpleaded, and—in some instances— erroneous facts for the facts asserted in Plaintiff's First Amended Complaint (Dkt. 7) ("FAC"), and then treats mandatory supervision as a surrender of constitutional rights and a categorical bar to suit. Those errors affect the disposition of both the federal claims and the independent Texas claims against Jana Hull. Plaintiff also requests the specific corrective order described in Section VIII to address counsel's persistent factual misrepresentations.

The Court granted leave to file the FAC. Dkt. 15. The State Defendants moved to dismiss, Dkt. 10, and Plaintiff responded, Dkt. 14. This motion identifies material errors in the resulting dismissal, using that existing record and controlling law. References to docketed documents use their PDF page numbers; paragraph references identify the FAC or the response as stated.

The motion is submitted within 28 days of September 8 under the conservative assumption that the Order, Dkt. 16, started Rule 59(e)'s period, which would make this motion due no later than October 6, 2026. The docket materials available to Plaintiff show the case as terminated but **do not show a separate Rule 58 judgment**. Dkt. 16 contains the Court's reasoning and disposition in a single document. Plaintiff therefore also requests clarification of the judgment's entry and, if required, a separate judgment under Rule 58(d). Although the absence of a separate document does not create an unlimited period, and Rule 58(c)(2) supplies a 150-day alternative to entry of the required separate document, Plaintiff raises the discrepancy

now to avoid uncertainty in postjudgment and appellate procedure, without relying on it to delay this motion.

**II. Issues and governing standards**

The first issue is whether material factual and legal errors require correction under Rule 59(e). That rule permits correction of manifest errors of law or fact; reconsideration is extraordinary relief, not an occasion merely to repeat previously rejected arguments. *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004). The errors of fact and law Plaintiff raises here are specific: erroneous "facts" involving a purported warrant and finding of child pornography, nonexistent admissions, an unestablished camera condition; an erroneous conclusion involving a blanket constitutional waiver; and failure to distinguish prospective relief and separate claims.

The second issue is whether dismissal can stand when the actual allegations, capacities, and requested remedies are evaluated separately and specifically, giving effect to the essential framework governing the motion to dismiss:

A) . At Rule 12(b)(6), well-pleaded facts and reasonable inferences favor the plaintiff; qualified immunity does not authorize resolving disputed facts against him. *Allen v. Hays*, 65 F.4th 736, 743–44, 746 (5th Cir. 2023);

B) *Heck* requires attention to whether success on the particular claim necessarily undermines an outstanding conviction or sentence. *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994); and,

C) Purely prospective relief requires the distinct analysis mandated by *Olivier v. City of Brandon*, 607 U.S. 552, 146 S. Ct. 916, 924-926 (2026).

The third issue concerns future injury and official-capacity relief. A real prospect of future injury, traceable to a defendant and redressable by the requested relief, is necessary; past injury alone is insufficient. *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003). The *Ex parte*

*Young* inquiry asks whether an ongoing federal violation is alleged and the relief is prospective. *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002).

Finally, if a pleading defect remains, the Court should consider a targeted amendment and the correct form of disposition, rather than an undifferentiated dismissal with prejudice. See *Foman v. Davis*, 371 U.S. 178, 182 (1962); *DeLeon v. City of Corpus Christi*, 488 F.3d 649, 656–57 (5th Cir. 2007).

**III. Summary of the argument**

The FAC alleges that officials knowingly repackaged lawful conduct as violations, including by directing a treatment discharge and then charging failure to participate. It does not allege or even suggest a scenario in which a warrant uncovered child pornography. Nor does it admit taking the restaurant photographs or failing to inform the children's parents of Plaintiff's status. Treating those propositions as established makes the officers' conduct appear justified before the pleading is evaluated.

Correcting the record also changes the legal analysis. State employment does not eliminate personal-capacity liability; supervision does not waive every constitutional protection; and *Heck* does not bar every claim associated with parole. *Olivier*, decided before the dismissal, specifically requires separate treatment of genuinely prospective relief. Claims for state-law torts involving Hull's allegedly deceptive billing and private therapeutic services likewise cannot be dismissed merely by describing the entire case as habeas litigation. Plaintiff seeks reconsideration on the pleaded facts, a precise corrective ruling, and, alternatively, an opportunity to cure identified defects.

## IV. Material factual errors in the dismissal

### A. The FAC does not allege a warrant or discovery of child pornography

Dkt. 16 at 2 states that "a search warrant was obtained" and that the search revealed downloaded "child pornography." The cited pleading supplies neither proposition. It describes Dan-Aliu taking Plaintiff's phone to Evans, Evans examining the gallery and download history, and Plaintiff explaining that the downloaded stock images were non-obscene material used to prepare his criminal defense. FAC ¶¶ 17–23, 35(c). Even *Defendants*' factual account acknowledges the allegation that the images were not obscene. Dkt. 10 at 2. The Court should not have replaced that allegation with an unpleaded **finding of criminal material** at Rule 12.

The warrant assertion similarly changes the account from the pleaded **office encounter** into a purported judicially authorized search. Plaintiff does not seek a new Fourth Amendment ruling through this motion. He requests correction of an unsupported factual premise that materially influenced the Court's description of the case and its conclusion that officials were merely performing duties Plaintiff had accepted. Dkt. 16 at 3–4.

It is not clear where the Court came by the idea that this case involved any warrants or child pornography. Neither party's pleadings support this narrative.

### B. Three distinct groups of images were improperly collapsed

The FAC distinguishes Plaintiff's photography before his 1996 arrest, stock images downloaded in 2023 for consultation with a defense expert, and photographs depicting a restaurant work meeting. FAC ¶¶ 14, 21–26, 35(b)–(c), 45–46. It expressly alleges that the photographs of minors taken by Plaintiff predated supervision. FAC ¶ 35(b). The presence of restaurant photographs on his phone is not an admission that he took them. His response expressly identified that error. Dkt. 14 at 4 & n.3, ¶ 10.

The restaurant allegations are also narrower than Defendants' account: the children attended with their parents, were not seated next to Plaintiff, did not interact with him, and were outnumbered by adults. FAC ¶¶ 24–26. Plaintiff alleges an approved work outing, not written approval for contact with particular children. Those allegations must be assessed under the actual condition; they cannot be converted into admissions of photography, prohibited contact, or failure to disclose his status to parents. The FAC makes no admission of that nondisclosure.

**C. The applicable camera condition was not established**

Dkt. 16 at 2 lists conditions on owning or operating camera equipment among Plaintiff's actual conditions. **Defendants** asserted that restriction while citing the FAC's description of conditions and a general Board policy. Dkt. 10 at 1, 13 & n.3. But the FAC established no such restriction. FAC ¶ 9. Plaintiff's response also specifically addressed the policy's limiting predicate, which was not disclosed to the Court by Defendants, concerning use of equipment in the offense and **disputed its applicability to him**. Dkt. 14 at 4–5, ¶ 10(c). At this stage of the proceeding, the Court should not have credited Defendants' version of Plaintiff's conditions over Plaintiff's version. Rule 12 proceedings require the Court to take the Plaintiff's well-pleaded facts as true.

The issue is not whether the Board **can** impose an appropriate restriction. It is whether **Plaintiff** was subject to the asserted restriction, in the relevant form and period, and whether Plaintiff's pleaded conduct violated it. Neither a general policy citation nor counsel's unsupported vouching of facts establishes those propositions. If the Court considers a document outside the permissible pleading record, Rule 12(d)'s requirements must be addressed; judicial notice of a policy's existence does not establish its disputed application to Plaintiff. (Section VIII of this motion further addresses Defendants' inaccurate presentation of facts.)

**D. Therapy litigation and administrative review require accurate descriptions**

The FAC separates *private PTSD therapy*, billed to Plaintiff and his insurance with associated confidentiality assurances, from required sex-offender group treatment. FAC ¶¶ 12–16, 48–52. The dismissal's generic description of "required counseling" omits a distinction central to Hull's independent alleged duties and financial conduct. The FAC further alleges that Hull discharged Plaintiff at Dan-Aliu's direction, then instructed him to attend a session, collected payment, and reassured him about revocation concerns. FAC ¶¶ 30–35. Those allegations cannot be reduced to a parolee's refusal to participate.

The litigation allegations also extend beyond a generic civil property suit. The 2023 downloads allegedly served Plaintiff's defense of then-pending criminal charges; the prosecution ended in April 2024, while disputes over retained property continued. FAC ¶¶ 14, 22–23, 45. That chronology matters to the Sixth Amendment theory and the distinct retaliation theory.

Finally, the FAC alleges initial county-jail detention, followed by an ISF sanction, with total confinement from May 22 through September 20, 2024—**not** continuous ISF placement throughout those dates. FAC ¶¶ 35–40. It alleges an attempted Board appeal refused because the Board considered the sanction something **other than actual revocation**. FAC ¶¶ 38–39. Plaintiff does not claim that he pleaded a state-court appeal. The necessary correction is to recognize the attempted administrative challenge and nature of the sanction under *Heck*, without treating their description as either proof of favorable termination or a categorical bar to every civil claim.

**V. The legal consequences must be assessed claim by claim**

**A. *Heck* does not impose the categorical bar stated in the order**

Dkt. 16 at 3–4 treats official action in the course of supervising parole as sufficient to invoke *Heck*. *Heck* instead asks whether success would necessarily imply the invalidity of an outstanding conviction or sentence. 512 U.S. at 486–87. Its principle can reach parole revocation.

*Littles v. Bd. of Pardons & Paroles Div.*, 68 F.3d 122, 123 (5th Cir. 1995). But neither the defendant's job nor the general subject of supervision answers the required question.

Plaintiff preserves the argument presented in Dkt. 14 at 8–10, ¶¶ 23–28: the Board imposed an ISF sanction rather than revoking supervision, and **success would not invalidate or alter his underlying conviction, sentence, or supervision term**. FAC ¶¶ 37–40. *Muhammad v. Close*, 540 U.S. 749, 751–55 (2004), squarely rejects a categorical *Heck* bar for disciplinary proceedings without the necessary consequence for the conviction or sentence's duration. The inquiry must examine the particular claim and its relationship to the adverse determination. *Smith v. Hood*, 900 F.3d 180, 185 (5th Cir. 2018). The Court's opinion made no such examination.

*Heck* can support dismissal on the pleadings when the bar follows from the allegations and properly considered record. But the order cannot supply missing findings, treat counsel's disputed characterizations as admissions, or presume the legal consequences needed to establish that bar. Nor can it summarily say that *Heck* defeats all claims, omitting the very case-by-case analysis the Fifth Circuit requires.

The Court should identify which claims and injuries it believes necessarily require invalidating a determination that is within *Heck*'s scope. In particular, the Court should separately consider and specify how *Heck* could bar claims for future relief or claims against Hull involving state-law issues of fees, representations, and confidentiality to the extent those claims can succeed without invalidating confinement. Plaintiff acknowledges that merely requesting a different category of damages would not save an otherwise inseparable challenge. But the Court must **perform** that analysis before extinguishing the entire action.

**B. *Olivier* requires separate consideration of prospective relief**

On March 20, 2026, the Supreme Court held that *Heck* does not bar a claim seeking only prospective relief against future enforcement, even though the plaintiff had an outstanding conviction under the challenged enactment. *Olivier*, 607 U.S. at 560–67. The decision preceded Dkt. 16; it is controlling law bearing on the order's manifest legal error, not a claimed postjudgment change in law. *Olivier* also explains the separate treatment of prospective relief in cases that include damages claims and discusses challenges to future parole procedures. *Id.* at 562–64; see *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005).

Count X seeks prospective standards and procedures governing future enforcement by the officials now responsible, and the FAC expressly names those officials only for that purpose. FAC ¶¶ 4–5, 41–42, 53, 59. Plaintiff requests consideration of that claim insofar as it seeks prevention of future unconstitutional enforcement, without expunging the 2024 findings, recovering past-confinement damages, or obtaining release. Joining that claim with retrospective claims does not justify treating every remedy as a demand to invalidate past confinement.

While *Olivier* reserves whether a person still in custody for violating the challenged statute may bring that prospective challenge, 607 U.S. at 559 n.3, Plaintiff's requested future procedural relief neither invalidates the conviction underlying supervision nor shortens its term. *Wilkinson* permits current prisoners to pursue future parole-procedure claims where success would not necessarily require immediate or speedier release. 544 U.S. at 81–82. Read together, the decisions require analysis of the actual prospective remedy; they do not support the Court's blanket dismissal.

**C. Supervision does not waive all constitutional rights or personal liability**

The Court's waiver premise, suggesting that Plaintiff has waived **all** constitutional challenges to conditions of parole or revocation proceedings, is the very definition of a manifest error of law. Plaintiff is not aware of a single case decided within his lifetime that would support that premise.

Significantly, the Court begins by misidentifying the nature of Plaintiff's release. The FAC expressly notes that Plaintiff was released on mandatory supervision. FAC ¶¶ 1, 14. Texas Government Code § 508.154(a)–(b) requires acceptance and execution of a contract before release on discretionary parole; subsection (c) instead requires that a mandatory-supervision releasee receive written conditions. *Hernandez v. Livingston*, No. 12-50020, slip op. at 4 (5th Cir. Oct. 22, 2012) (unpublished), recognizes that contractual acceptance is unnecessary for mandatory supervision. Subsection (d) nevertheless requires compliance with imposed conditions. The distinction defeats any inference of wholesale contractual surrender, although it does not exempt Plaintiff from lawful conditions.

More fundamentally, it is black-letter law that even a parolee retains constitutionally protected conditional liberty. *Morrissey v. Brewer*, 408 U.S. 471, 479–82, 488–89 (1972). The Court must identify a particular valid restriction or waiver and explain how it resolves the particular claim. Supervision status alone does not authorize punishment through knowingly false premises or eliminate federal review. Nor does it dispose of Hull's alleged obligations in providing private therapeutic services.

The Court's capacity analysis likewise requires correction. Dkt. 16 at 3 first describes an official-employment defense under the parties' contentions, then states its own categorical bar in the analysis. But officials may be sued personally for their own unconstitutional official acts; their official role does not itself confer Eleventh Amendment immunity from personal liability.

*Hafer v. Melo*, 502 U.S. 21, 25–31 (1991). Dan-Aliu and Evans are sued individually for their own conduct. FAC ¶¶ 2–3, 27–35, 44–47. Ruiz De Velasco and Moberley are sued officially for prospective relief, not damages for predecessors' decisions. FAC ¶¶ 4–5 & nn.2–3, 53. Qualified immunity and any function-specific immunity require separate analysis. No named defendant is a judge.

**D. The ongoing enforcement allegations require a standing and *Young* analysis**

Plaintiff does not rely solely on his continued supervision or past injury. The FAC alleges continuing practices that expand written conditions to punish non-obscene images, incidental presence near supervised minors, and provider-directed discharge; it alleges resulting exposure to future arbitrary enforcement. FAC ¶¶ 41–42, 53. The response further explains that his property-return proceeding remained unresolved and that the prior enforcement chilled his pursuit of it. Dkt. 14 at 6–7, ¶¶ 14–18. If that clarification must appear in the complaint itself, Plaintiff requests leave to incorporate it, with concrete intended activity and the responsible officials' enforcement roles.

*Bauer* requires a real future threat. 341 F.3d at 358. It does not establish that a parolee can never face a judicially cognizable future injury. In evaluating alleged deterrence of protected litigation and expression, the Court should consider intended protected conduct, the scope of the challenged enforcement practice, and the alleged credible threat. See *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330–35 (5th Cir. 2020). Plaintiff seeks application of that inquiry, not a presumption of standing from status alone.

Under *Verizon Maryland*, the Court should also examine the particular ongoing federal violation, each official's connection to enforcement, and a remedy directed to future conduct. 535 U.S. at 645. Plaintiff seeks enforcement of written conditions with constitutionally adequate

notice and review, not a federal command to disregard valid supervision conditions or an order awarding retrospective compensation from the State. Any need to narrow the requested prospective relief or specify the officials' responsibilities supports targeted amendment, not the conclusion that all constitutional protections were waived.

**VI. The remaining dismissal arguments depend on the correct allegations**

Defendants' alternative grounds do not render these errors harmless. Retaliation for protected litigation differs from a freestanding denial-of-access claim. Count II alleges punishment for criminal-defense preparation and continued property litigation, including treating lawful litigation materials as violations. FAC ¶¶ 14–23, 35, 45. *Woods v. Smith*, 60 F.3d 1161, 1164–66 (5th Cir. 1995), requires a protected right, retaliatory intent, an adverse act, and but-for causation; a specific chronology may support intent. The pleaded sequence must be assessed against those elements. A nonexistent admission of an independent violation cannot defeat causation.

The due-process theory likewise concerns notice and alleged deliberate manipulation, not an unrestricted right to possess any image or interact with any minor. FAC ¶¶ 9–12, 31–35, 44. *Morrissey* recognizes the need for reliable facts and appropriate process before protected conditional liberty is withdrawn. 408 U.S. at 479–82, 488–89. Supervision conditions are also subject to fair-notice principles. *United States v. Abbate*, 970 F.3d 601, 603–05 (5th Cir. 2020). *Abbate* upheld the pornography restriction before it; Plaintiff invokes its notice framework, not an assertion that it invalidated an equivalent condition. Here, the challenged conduct includes officals manufacturing nonparticipation by ordering the provider to discharge a participating supervisee.

The joint-action allegations identify Evans's direction and participation in violation paperwork, Dan-Aliu's alleged direction to discharge Plaintiff, Hull's discharge and subsequent attendance instructions and fee collection, and use of that discharge as a violation. FAC ¶¶ 27–35, 40, 47. The FAC does not identify which officer made one statement to Hull about photographs. FAC ¶ 31. The remaining coordinated sequence must nevertheless be evaluated for a plausible agreement and underlying deprivation, without demanding trial proof or attributing every act to every defendant.

The Board's later decision also does not, merely by its existence, resolve the pleaded causation issue. Defendants rely on that decision at Dkt. 10 at 14. Plaintiff alleges that the officers created the supposed nonparticipation violation by directing his discharge and then used it to obtain the sanction. FAC ¶¶ 31–40; Dkt. 14 at 13–14, ¶¶ 38–40. The Court must address whether that alleged manipulation caused the injury; it cannot assume a decision independent of the alleged misconduct without evaluating those allegations.

Qualified immunity requires identifying each officer's conduct and whether it violated a right clearly established when the events occurred. *Allen*, 65 F.4th at 743–44, 746. Plaintiff relies on the established protection against retaliation for court access described in *Woods* and on the pleaded notice and manipulation theory, not a general proposition that all photography is constitutionally immune from supervision. If the Court finds a particular merits or clearly-established-law defect, it should identify that defect on the actual allegations and consider the proposed opportunity to amend.

The Sixth Amendment theory concerns defense preparation while the criminal prosecution was pending, not a claimed general right to counsel in civil property litigation. FAC ¶¶ 14, 22–23, 45. Failure of that particular theory would not alone dispose of the separate First

and Fourteenth Amendment theories. Similarly, Defendants' Prison Litigation Reform Act argument, Dkt. 10 at 20–21, cannot rest simply on past detention. Section 1997e(e)'s mental-or-emotional-injury limitation applies to an action brought by a prisoner confined in a correctional facility; § 1997e(h) defines that status. The relevant status is the plaintiff's status when suit is brought. The pleaded confinement ended in 2024 and this action began in 2026. FAC ¶¶ 1, 40. See *Janes v. Hernandez*, 215 F.3d 541, 543 (5th Cir. 2000) (PLRA fee limits inapplicable to plaintiff who was not a prisoner when he filed). Ordinary community supervision should not be conflated with the locked halfway-house custody analyzed in *Jackson v. Johnson*, 475 F.3d 261, 265–67 (5th Cir. 2007).

**VII. Hull and the Texas claims require separate disposition**

The motion before the Court was filed by the four State Defendants. Dkt. 16 at 1. Yet the order dismissed all parties and claims with prejudice, without separately analyzing Hull's alleged conduct or Counts V–IX. FAC ¶¶ 48–52 allege deceptive billing, fraudulent inducement, confidentiality and fiduciary breaches, unjust enrichment or money had and received, and negligent misrepresentation. The requested relief includes restitution and disgorgement of fees, apart from damages attributed to confinement. FAC ¶¶ 57–58.

At least the claim that Hull continued collecting fees after discharging Plaintiff calls for analysis independent of whether the Board's sanction was valid. Plaintiff does not contend that every requested injury is necessarily independent of that sanction, or that all Texas elements have already been adjudicated in his favor. He objects to dismissing these claims on a blanket theory of parole immunity and habeas exclusivity without addressing their distinct factual predicates and remedies.

Plaintiff expressly objects to the lack of notice and opportunity to address dismissal of these distinct claims. The State Defendants' motion sought relief for those defendants, and the Court gave no advance notice of the grounds for dismissing Counts V–IX against Hull. In *Davoodi v. Austin Independent School District*, 755 F.3d 307, 310–11 (5th Cir. 2014), the court vacated dismissal of a state claim swept into a ruling on a partial motion without notice. See also *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1176–77 (5th Cir. 2006). The prejudice here is concrete: no identified challenge gave Plaintiff an opportunity to defend the Texas elements, distinguish the fee injuries, or propose a targeted cure before dismissal with prejudice.

Plaintiff is aware that Hull's lack of a federal motion or appearance does not alone prevent dismissal. A genuinely common defense can benefit a nonappearing defendant. *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001). But the order identifies no defense common to the State Defendants' federal claims and every private-service claim against Hull. Plaintiff seeks reinstatement and fair consideration of those claims, not a default judgment through this motion. If all federal claims are dismissed and supplemental jurisdiction is declined under 28 U.S.C. § 1367(c)(3), the Court should consider remand of the Texas claims in this removed action, or dismissal without prejudice, rather than a merits judgment against them.

**VIII. Specific corrective relief concerning counsel's factual representations**

Assistant Attorney General Joseph Fisk Beckham signed Dkt. 10 and presented factual characterizations of the FAC as grounds for dismissal. Those characterizations carry counsel's Rule 11(b)(3) responsibility for factual support. Plaintiff identified the problems in Dkt. 14 at 2–5, ¶¶ 2–13. The resulting order nevertheless treated the case through materially inaccurate premises. A general opportunity to file another brief will not by itself identify whether counsel still stands behind the particular assertions.

First, Dkt. 10 at 7 and 14 attributes to Plaintiff an admission that **he took** the restaurant photographs; pages 16–17 likewise rely on **photography of minors during supervision**. But FAC ¶¶ 24–27 contain no admission of authorship, and ¶ 35(b) alleges the relevant photographs taken by Plaintiff predated his 1996 arrest. Dkt. 14 at 4 & n.3 expressly rejects Defendants' characterization. Possession of photographs and authorship are not fungible concepts.

Second, Dkt. 10 at 14 attributes an admission that Plaintiff did not inform the children's parents of his sex-offender status. No cited passage of the FAC makes that admission. Whether the parents knew, whether a disclosure obligation applied, and whether a particular contact was prohibited are separate questions. Counsel may argue the legal significance of pleaded facts; he may not supply an "admission" that the pleading does not contain.

Third, Dkt. 10 at 1 and 13, with related reasoning at 16–18, presents a camera and photography restriction as applicable to Plaintiff without establishing the individual condition and predicate disputed in Dkt. 14 at 4–5. The general policy citation counsel provided the Court omits the limiting factual issue raised in that response. Counsel should identify the operative historical text, the instrument imposing it on Plaintiff, and the proper support for any necessary equipment-use predicate, or withdraw the assertion that the restriction has been established on this pleading record.

**These are material assertions made by Defendants and vouched for by counsel.** The supposed admissions are used against standing, retaliation, due process, and qualified immunity; the supposed camera restriction supplies a justification for treating photography as prohibited. The Court should expressly state that the FAC contains neither claimed admission and that an applicable categorical camera prohibition has not been established for purposes of the present

motion. That would correct the Rule 12 record without deciding contested historical facts after an evidentiary hearing that has not occurred.

Additionally, Plaintiff informs the Court that he personally emailed AAG Beckham to direct his attention to the inaccurate facts presented in Defendants' pleadings and asking him to correct any factual misrepresentations made to the Court.

In light of the foregoing, Plaintiff further requests, separately and in addition to Rule 59 relief, an order requiring AAG Beckham, within 14 days, to file a response signed by him addressing each proposition separately: (1) identify the exact docket, page, and paragraph said to contain each "admission," or expressly withdraw the attribution of that admission; and (2) identify the operative camera condition, its relevant dates, the instrument applying it to Plaintiff, and the factual support for its predicate, or expressly withdraw reliance on it as an established pleading-stage fact. Any newly tendered material should be identified as such, with an explanation of the procedural basis for considering it under Rule 12. Plaintiff requests seven days to reply before the Court relies on any disputed material.

Government counsel's obligation to accuracy is especially significant where his representations are offered to foreclose judicial review of government conduct. See *Freeport-McMoRan Oil & Gas Co. v. FERC*, 962 F.2d 45, 47–48 (D.C. Cir. 1992) (discussing the government lawyer's obligation to justice in civil litigation). That persuasive authority reinforces the need for a candid, specific correction; it supplies no substitute for the governing pleading rules. Plaintiff seeks neither a finding of subjective dishonesty from counsel's silence nor monetary or disciplinary sanctions in this motion. He seeks a judicial ruling that the identified assertions cannot continue to function as established facts without the support counsel should be

able to identify. The requested relief is corrective and procedural, not an attempt to bypass Rule 11(c)'s separate sanctions procedures.

**IX. Alternative amendment and precise relief requested**

If the Court finds that the FAC needs greater specificity, Plaintiff requests vacatur followed by 21 days to file a second amended complaint under Rule 15(a)(2). The proposed amendment would separate each injury and remedy for *Heck* analysis; state concrete intended future litigation or expressive activity and the credible enforcement threat; specify each official's enforcement connection and narrow prospective relief; clarify each individual defendant's conduct; and separate Hull's financial and private-service injuries from confinement damages. This is a request to cure identified defects after reopening, not an assertion of an unconditional right to amend a closed judgment. See *Foman*, 371 U.S. at 182.

Furthermore, If the Court retains a *Heck* disposition for particular damages claims, the judgment should identify them and use the conditional disposition recognized in *DeLeon*: "with prejudice to their being asserted again until the *Heck* conditions are met." 488 F.3d at 657. A jurisdictional standing or sovereign-immunity dismissal should not operate as an adjudication on the merits. Any disposition of the Texas claims after declining supplemental jurisdiction should likewise preserve their proper adjudication in state court.

Even if the Court retains some or all of the dismissal, Plaintiff separately requests correction of the unsupported warrant and child-pornography statements and the nonexistent admissions. An adverse legal disposition does not require leaving an inaccurate factual account in the public record. **The amended order should expressly state that the pleading-stage ruling made no factual determination that Plaintiff downloaded child pornography**.

Plaintiff therefore requests that the Court (1) grant this motion, vacate Dkt. 16's dismissal, and reopen the case; (2) correct the factual premises identified above and enter the specific support-or-withdraw order in Section VIII; (3) consider each claim, defendant, capacity, and remedy under the appropriate standard; (4) alternatively, reinstate the claims not defeated by the retained grounds, permit the specified amendment, and limit any remaining dismissal to the proper claims and form; and (5) clarify Rule 58 entry and enter a separate judgment if a final disposition remains and a separate document is required. The request for factual correction is made independently of the request for complete vacatur.

Respectfully submitted,

Matthew James Leachman
832-960-3665
leachman.defense@gmail.com
**As of the date of filing**:
2505 Reid St Apt A
Houston, Texas 77026
**Beginning Oct. 16, 2026**:
1533 London Terrace
Springdale, AR 72764

**PLAINTIFF PRO SE**
Date: 06 Oct 2026

**Certificate of conference**

Pursuant to Local Rule 7.1(D), Plaintiff provides the following conference information concerning the relief requested in this motion:

**State Defendants — counsel contacted**: AAG J. Fisk Beckham

**Date and method**: Via email on Oct 5, 2026

**Response and position on the requested relief**: Via email on Oct 5, 2026— State Defendants wholly oppose Plaintiff's Rule 59 motion

**Defendant Hull — party or current counsel contacted**: Attorney Derrell Wright and Jana Hull personally (earlier communication to Mr. Wright regarding Hull's failure to comply with HIPAA requests was answered with an email that he "no longer represents her in this matter," leaving ambiguity as to whether he meant "no longer represents her in the federal lawsuit" or "does not represent her as to HIPAA requests")

**Date and method**: October 5, 2026, email to Mr. Wright seeking clarification of his status in this lawsuit and position on the Rule 59 motion was not answered. Therefore, Plaintiff called both Wright and Hull at their business numbers, reaching voicemail at each number.

**Response and position on the requested relief**: Neither Wright nor Hull replied.

If a conference could not be completed, the efforts made and reason for requesting consideration without a completed conference are:

It appears that Derrell Wright no longer represents Defendant Hull. Defendant Hull has not responded to any efforts to contact her since 2024, including not responding to HIPAA directives to release records, and it seems unlikely further attempts will yield any different result. In addition, I am concerned that repeated efforts to contact her personally, when she has pointedly not responded, could be deemed harassment, and there is no known counsel other than Wright with whom I could attempt communciation.

Matthew James Leachman

**Certificate of service**

I certify that on October 6, 2026, I served a true and correct copy of this motion and its proposed order by United States first-class mail, postage prepaid, addressed as follows:

J. Fisk Beckham
Assistant Attorney General
Law Enforcement Defense Division
Office of the Attorney General of Texas
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
**Counsel for the State Defendants**

For Defendant Jana Hull

**Person served and capacity**: Jana Hull, Center for P.E.A.C.E. (personally)

**Mailing address**: 8951 Ruthby St, Suite 2 E, Houston, TX 77061.

Matthew James Leachman